## SUSIE S. ROSE, Respondent, v. MISSOURI STATE LIFE INSURANCE COMPANY, Appellant.

### St. Louis Court of Appeals, June 4, 1912.

1. **LIFE INSURANCE: Nonforfeiture Statute: Prerequisites to Application of Statute.** Section 6946, Revised Statutes 1909, which provides that no life policy, after payment of three annual premiums, shall be forfeited for nonpayment of premiums, but that it shall be subject to certain rules of commutation, one of which is, that the net value of the policy at the time of lapse shall be computed, with four per cent interest, and, after making certain deductions, the balance shall be employed as a net single premium for temporary insurance, for the full amount written in the policy, does not require a policy to have been in force three years, in order to render the net value available for temporary insurance, but merely requires that three annual premiums shall have been paid thereon, and it will be sufficient if all three of such premiums were paid at the same time.

2. ———: ———: ———: **Facts Stated.** Insured, having an assessment life insurance policy for $3000, issued December 31, 1894 by a company that was absorbed by defendant, accepted, in lieu thereof, a policy for the same amount on the twenty-year payment plan, issued October 13, 1902, but dated October 1, 1892, and which provided that it should mature in twenty years, and required the payment of an annual premium of $113.10. The policy being antedated ten years, also recited, as a partial consideration, a loan to insured for $867.75, which it provided should be deducted from the amount due on settlement of the policy; this amount representing the reserve unpaid for the time the policy was antedated. Insured paid only one premium in cash, and died on May 8, 1908. *Held*, that the cash payment and the loan certificate should be considered as hav-

ing paid more than three annual premiums, within section 6946, Revised Statutes 1909, and that the reserve was, therefore, applicable to purchase extended insurance, in accordance with that section.

3. ———: ———: ———: **Deducting Loan.** A life insurance policy having been antedated, a loan certificate was executed by insured to represent the reserve that the policy would have earned if premiums had been paid during the period it was antedated, which certificate was a lien on the policy and provided that, in the event of insured's death or failure to make any payment when due, the amount unpaid should become due and deducted from the amount payable under the policy. *Held*, said provision did not mean that the loan should be satisfied only from the proceeds of the policy, but meant that the loan should be deducted from three-fourths of the net value of the policy; and hence, default having been made in the payment of premiums after the first, such loan certificate should be considered as an indebtedness on account of past-due premiums and deducted from three-fourths of the net value of the policy and the balance only applied to purchase extended insurance, under section 6946, Revised Statutes 1909.

4. ———: ———: ———: ———: **Sufficiency of Net Value.** In an action on a life insurance policy, claimed to have been in force at the time of insured's death by employing three-fourths of the net value of the policy at the time it lapsed as a net single premium for temporary insurance, under section 6946, Revised Statutes 1909, *held*, that, after deducting the amount of a loan certificate given by insured for the unpaid reserve due on the policy from three-fourths of its net value at the time of the lapse, as provided by said section, nothing was left for temporary insurance, and hence *held* that plaintiff was not entitled to recover.

5. ———: **Interpretation of Policies: Statutes.** Provisions in life insurance policies must be construed with reference to the statutes, inasmuch as the statutes become part of the contract of insurance.

Appeal from Lincoln Circuit Court.—*Hon. James D. Barnett, Judge.*

REVERSED.

*O. H. Avery, Jones, Jones, Hocker & Davis* and *James C. Jones, Jr.,* for appellant.

(1) The nonforfeiture law is not applicable because only one premium was paid on the policy sued on, and the nonforfeiture law (Sec. 7897, R. S. 1899)

is, by its letter, applicable only when three premiums have been paid on the policy to which it is sought to be applied. (2) If the policy is treated as a policy on which eleven full premiums have been paid, then the nonforfeiture law is applicable and the commands of that law must be followed, but the nonforfeiture law expressly provides that three-fourths of the net value of the policy shall be applied as a single premium to purchase extended insurance only after there has been deducted from such net value the amount of "any notes or other evidence of indebtedness given on account of past premium payments" on the policy. Inasmuch as the indebtedness, evidenced by the lien note, was "on account of past premium payments," and as this indebtedness equaled and exceeded three-fourths of the net value of the policy (treating it as a policy on which eleven full premiums have been paid), there was no "balance" of net value applicable to extend the policy after lapse. Pavy v. Ins. Co., 125 La. 262; Black v. Ins. Co., 133 Ga. 859; Bank v. Benefit Assn., 81 Fed. 935; Bank v. Ins. Co., 84 Fed. 123; Rose v. Ins. Co., 153 Mo. App. 90; Westerman v. Ins. Co., 196 Mo. 670; State ex rel. v. Vandiver, 213 Mo. 187; Ross v. Railroad, 111 Mo. 25; Endlich on Int. of Stats., sec. 360; Ins. Co. v. Hoge, 21 How. 35.

*Wm. A. Dudley* for respondent.

(1) On the point that the policy is entitled to extension under the nonforfeiture law, we cite generally the following authorities: R. S. 1899, secs. 7897 *et seq.*; R. S. 1909, sec. 6946; Horton v. Ins. Co., 151 Mo. 604; White v. Black, 115 Mo. App. 32; 30 Cyc., p. 1180; Dobbins v. Ins. Co., 144 Mo. 95; Leeper v. Ins. Co., 93 Mo. App. 602; Carpenter v. Jameson, 6 Mo. App. 216; Construction Co. v. Hayes, 191 Mo. 248; Tate v. Railroad, 131 Mo. App. 107; Kelly v. Ins. Co., 3 Mo. App. 354; 2 May on Ins., 153 Mo. App. 90. (2) On the point that the loan certificate

should be deducted from the policy, we submit the following authorities: Keller v. Ins. Co., 95 Mo. App. 627; Bishop on Contracts, sec. 94; Webb v. Ins. Co., 134 Mo. App. 576; Ins. Co. v. Statham, 93 U. S. 24; Gruwell v. Ins. Co., 126 Mo. App. 496; Branes v. Ins. Co., 141 Mo. App. 212; Schmidt v. Forresters, 228 Mo. 691; Smith v. Ins. Co., 173 Mo. 329; Burridge v. Ins. Co., 211 Mo. 158; Paschedag v. Ins. Co., 155 Mo. App. 185; 9 Cyc. 584, par. 7; Davidson v. Burmann, 27 Mo. App. 655; Houck v. Brodwell, 28 Mo. App. 644; Ex parte v. Snyder, 64 Mo. 61; Goodwin v. Ins. Co., 73 N. Y. 480; Fithian v. Ins. Co., 4 Mo. App. 386; Ins. Co. v. Bonner, 36 Ohio St. 51; Ins. Co. v. Smith, 35 So. (Ala.) 1004; Ins. Co. v. Van Metre, 121 S. W. (Ky.) 438.

NORTONI, J.—This is a suit on a policy of life insurance. Plaintiff recovered and defendant prosecutes the appeal.

The questions for consideration are two in number and relate to the propriety of the application of the nonforfeiture insurance statute, to the end of affirming extended insurance under the policy in suit and, furthermore, as to whether or not a deduction of a loan on account of past premiums should be made from the net value of the policy in event the policy is declared to be one to which the net reserve is available for the purposes of extended insurance. Though the present policy clearly contemplates a net reserve and, therefore, falls within the purview of the nonforfeiture statute, but one actual payment of premium had been made thereon at the time of lapse. However, the policy was issued to the insured in lieu of a prior policy on the assessment plan of several years' standing and on its face reveals a contract of life insurance on the twenty payment premium plan, to be effected during twenty years, with eleven of such premium payments fully made. Of course, if eleven an-

nual premiums were actually paid on the particular policy involved here, no one could doubt that a sufficient net reserve obtained to extend the policy beyond the date of the death of the insured. But as a number of such premiums were paid on the prior assessment policy and but one was in fact actually paid on this one, the matter of extended insurance is controverted throughout.

Plaintiff, the widow of Thomas M. Rose, the insured, is nominated beneficiary, as his wife, in the policy in suit. It appears that Thomas M. Rose, on December 31, 1894, effected an insurance on his life in favor of his wife, plaintiff, in the sum of $3000 with the Safety Fund Life Association. The Safety Fund Life Association was incorporated under the laws of Missouri, for the purpose of carrying on the business of life insurance on the assessment plan. The insured paid all the premiums and assessments essential to continue his insurance in force in that company until it was absorbed and superseded by defendant insurance company. In the early part of 1902, the Safety Fund Life Association was reincorporated under the laws of Missouri as a life insurance company on the stipulated premium plan, contemplating the accumulation of a reserve fund in aid of its policies. Upon thus reincorporating as an old line company, it is said the new company took over the assets and assumed the obligations of the prior Safety Fund Life Association. Among others, Thomas M. Rose, the insured, surrendered to defendant his $3000 policy in the Safety Fund Life Association and accepted in lieu thereof a new one on the stipulated premium plan for the same amount, and it is this policy with which we are now concerned.

By the provisions of the policy in suit, it appears that defendant insured the life of Thomas M. Rose in favor of his wife, plaintiff, for the sum of $3000 on the twenty year premium plan. This policy was is-

sued by defendant on the 13th day of October, 1902. It is in form a whole life policy but it provides for the payment of premiums for twenty years only, from October 1, 1892, to October 1, 1912. The annual premium stipulated for in the policy is the sum of $113.10, due on or before the first day of October in each year. But as the policy was antedated ten years, as if issued October, 1892, it provided for an annual premium of $113.10 only from and after the date of issue, that is, October, 1902, until and including October 1, 1912. Though the insured was forty-five years of age at the time of the issue of the policy to him, it insures him as of the age of thirty-five, for such was his age ten years theretofore, in 1892. The consideration recited in the policy is $980.85 and the further payment of $113.10 per annum thereafter.

Defendant requested, and the court gave, a special finding of facts under the statute, and from this it appears that besides finding the facts as above stated, the court found the consideration of $980.85 to have been made up as follows: First, the surrender to defendant by the insured of his policy in the Safety Fund Life Association; second, the execution by Rose of a certificate of loan on the present policy for the amount of $867.75 and the payment of $113.10 in cash. For this consideration the court found defendant insured plaintiff's husband in the sum of $3000 in her favor for the period of his life under the policy requiring twenty annual premium payments of $113.10 each to be made during the years from October 1, 1892, to October 1, 1912. The insured failed to pay the premium of $113.10 due October 1, 1903, and permitted the policy to lapse at that time. No payments were thereafter made and the insured departed this life nearly five years thereafter, on May 8, 1908. Though but one premium was actually paid in cash on the present policy—that is, the $113.10 paid in October, 1902—the court nevertheless found eleven an-

nual payments were paid thereon through the medium of the loan certificate for $867.75, the surrender of the old policy and the one premium above mentioned, and, therefore, declared that as a result of such payments a sufficient reserve was accumulated under the nonforfeiture statute to the credit of the policy to extend the insurance beyond the date of the death of the insured.

It is argued the court erred in its conclusion of law on the facts so found, for it is said that, though the court found eleven premiums had been paid on the policy, it appears conclusively that one only was paid. The statute (Sec. 6946, R. S. 1909) provides that no policy of insurance on life shall, after payment upon it of three annual payments, be forfeited or become void by reason of nonpayment of premiums thereon but it shall be subject to the following rules of commutation, etc. It then stipulates substantially that the net value of the policy at the time of lapse shall be computed upon the actuaries' or combined experience table of mortality, with four per cent interest, etc., and, after certain deductions therefrom, the balance employed as a net single premium for temporary insurance for the full amount written in the policy. Reference is made to the provision "after the payment upon it of three annual premiums, the policy shall not be forfeited but it shall be subject to the following rules of commutation, etc.," and it is argued thereon that the use of the singular pronoun "it" and the definite article "the" disclose beyond peradventure that the Legislature intended three actual premium payments must be made upon the policy involved here before a net reserve should be available for the purposes of extended insurance. But we believe the language of the statute does not compel an adoption of this view and that its provisions are sufficiently elastic to comprehend the contract now in judgment. By a thoughtful reading of

the statute, it is to be observed that it does not provide the policy shall not be forfeited for nonpayment of premiums after it has been in force three years but on the contrary it says it shall not be forfeited after the payment upon it of three annual payments. In other words, the statute does not require the particular policy to have been in force for three years in order to render the net reserve available, but it does require the payment of three annual premiums thereon. Here, the policy was issued in October, 1902, to the insured, who was then forty-five years of age, as if he were thirty-five years of age, and stipulated the payment of annual premiums from October, 1892, at which time the insured was thirty-five years of age, to October, 1912. At the time of effecting the insurance under this particular contract, the insured surrendered his old policy, paid one annual premium for the year 1902, that is, $113.10, and executed a loan certificate on the present policy of $867.75, which authorized the company to deduct such sum from the amount due him under the present insurance. As to the period between 1892 and 1902, this defendant was entitled to no premium for carrying the risk, for those years had expired and the insured still lived. The same may be said, too, with respect to the expenses of carrying the insurance on Rose during that period, but as Rose had paid no fixed premiums on his prior policy sufficient to create a reserve, it was essential for defendant to make some arrangement with him as to the deficiency in premium payments during the prior years—from 1892 to 1902. Then, too, the issuance of a new policy on a man aged forty-five years, as if thirty-five years of age, involves an increased risk for the lesser rate and suggests another reason why the inadequacy of the prior premiums should be supplied under the new contract for the purpose of establishing the reserve essential to complete the whole undertaking. It is obvious that because of these ele-

ments then in contemplation of the parties, the insured executed the loan certificate to defendant for $867.75, which stipulates that such amount is a charge upon the policy. It is true there was no actual loan made to the insured at the time. And it is true, too, that eleven full premiums were not actually paid on the policy. It is true, too, that the insured was not thirty-five years of age when the policy was issued. It is true, too, that it was utterly impossible for him to pay the twenty annual premiums of $113.10 between October 1, 1902, and October 1, 1912, and thus contribute the full amount essential to compensate the company and maintain the reserve on such a policy. The entire transaction reckoned with the fact of the insured's prior insurance in the company of which this defendant is the successor, and partook, in a measure, of metaphysics, as is not unusual in life insurance matters; but, on the whole, it is obvious the parties clearly intended to effect an insurance contract which vouchsafed all the rights and obligations incident to one on which eleven premium payments had been made. While we have not set forth all of the facts that may be availed of in support of this conclusion, it is sufficient to say that no one can understandingly read the record and accede to another view. The mere fact that all of these eleven premiums were paid at one and the same time is not sufficient to thwart the purpose of the nonforfeiture statute and repel its application. The statute requires three annual premium payments and it will suffice to invoke the statute if they are all paid to and accepted by the company at one and the same time. [See Horton v. New York Life Insurance Co., 151 Mo. 604, 52 S. W. 356.]

But it is argued the reserve available for extended insurance is an accumulation from premium payments after the cost of insurance and expense of the business is deducted and, therefore, unless premiums are actually paid no reserve may accumulate. The

thought is, that as the reserve originated in the first
instance in the equities of the case, it is inequitable
and unjust to treat with the matter as if a reserve
had accrued from the payment of premiums, when no
such premiums were actually paid. [See Rose v.
Franklin Life Ins. Co., 153 Mo. App. 90, 132 S. W.
613.] No one can doubt that this argument would in-
here with much force in a proper case, but not so
here, for, as we take it, the reserve of this policy
was fully provided for and protected in the loan cer-
tificate of $867.75, together with that portion of the
$113.10 premium actually paid in October, 1902, which
is available for that purpose. By the loan certificate
which the insured executed at the time of effecting the
transfer of policies, the present insurance contract
was charged with the amount of $867.75, which the
company was authorized to deduct thereunder. No
money was actually loaned to the insured at the time,
and it is obvious that this indebtedness against his
insurance was not created for the purpose of liquidat-
ing premiums for the ten years insurance which he
had under the policy of the Safety Fund Life Associa-
tion, for those premiums and assessments were fully
paid as they accrued. The period between October 1,
1892, and October 1, 1902, had fully lapsed. The insur-
ance had been carried and paid for by another com-
pany and certainly defendant was entitled to no com-
pensation under the present policy for that feature of
the risk. Upon issuing to Rose a new policy, ante-
dated ten years, which policy included, among other
things, the usual obligation arising perforce of our
nonforfeiture statute, the present defendant was con-
cerned only with obtaining from Rose a sufficient per-
centage of prior premiums to create or protect the re-
serve essential under the statute and compensate it
for effecting an insurance on a person forty-five years
of age as if he were aged but thirty-five. It, therefore,
appears that though defendant had not actually re-

.ceived the ten full annual premium payments for the ten preceding years during which it carried no insurance on Rose, it did receive, through the transaction of the loan certificate, an acknowledged indebtedness from him as a lien on the policy for an amount more than sufficient to supply the essential reserve, such reserve being, if all of the premiums were actually paid, $738 and some cents. In this view, it is neither inequitable nor unjust to compel defendant to perform the contract according to the nonforfeiture statute, for though it had not actually collected the ten prior premiums, it sufficiently secured the reserve to answer for the net value of the policy in event of lapse.

But it is argued, though such be true, the amount of the loan certificate together with six per cent simple interest thereon, for which it provides, should have first been deducted from the net value of the policy before the purchase of extended insurance. The court expressly found as a fact that the certificate of loan of $867.75, together with the obligation contained therein to pay simple interest on that amount at six per cent was part of the consideration for which the present policy was issued. It found, too, that the loan certificate with simple interest at six per cent computed thereon to the date of the death of insured, amounted to $1159.45. Touching the net value of the policy on October 1, 1903, the date of lapse, the court found that upon the actuaries' or combined experience table of mortality, with four per cent interest per annum thereon, such net value was $738 and some cents, but it found, too, that there were no note or notes or other evidences of indebtedness to the company given on account of past premium payments on said policy and that, therefore, three-fourths of the net value, taken as a net single premium for temporary insurance for the full amount written in the policy, was more than sufficient to continue the policy in force for a term extending beyond the death of the in-

sured. After so finding, the court deducted the amount of the loan from the amount payable under the face of the policy and gave judgment for the balance. On what theory the court found, or declared, rather, the loan certificate was not an evidence of indebtedness on account of past premiums we are unable to ascertain, for the conclusion of law is to the contrary. The nonforfeiture statute in force at the time the policy was issued provides for the method of computing the net value of the policy and provides, too, that after deducting from three-fourths of such net value any notes or other indebtedness to the company given on account of past premium payments on said policy, the balance shall be taken as a net single premium for the purpose of extended or temporary insurance. To deduct the amount of the loan certificate from three-fourths of the net value or reserve would consume the whole and leave a deficit besides.

It is argued for plaintiff that the court properly declined to deduct the amount of the loan certificate from three-fourths of the net value because the loan certificate itself provides that, "In event of my death, or failure to make any payment, when due, to said company . . . the amount remaining unpaid shall become due and be deducted from the amount payable under said policy." It is said the words "under said policy" discloses that the parties had stipulated the loan should be repaid from the proceeds of the policy and not in accordance with the statute. But we believe the language of the certificate should be interpreted in consonance with the statute which, under the accepted rule of decision in this state, becomes a part of the contract of insurance between the parties. [See Smith v. Mutual Benefit Life Ins. Co., 173 Mo. 329, 72 S. W. 935; Burridge v. New York Life Ins. Co., 211 Mo. 158, 109 S. W. 560.] Obviously, the loan certificate was executed by the insured to defendant as

165 Mo. App.—42

an acknowledgment of indebtedness on account of past premium payments. The court found as a fact that such certificate was parcel of the consideration for the new policy and on no other theory could such be true, for the insured paid in cash at the time only the annual premium of $113.10 for the year 1902. If this loan certificate is an evidence of indebtedness on account of past premium payments, then it falls within the express terms of the statute and such indebtedness should be deducted from three-fourths of the net value of the policy before any portion of such net value is applied to the purchase of extended insurance. Obviously, the precepts of natural justice alone require that if this loan certificate is to operate to the end of creating and maintaining the insurance and the net reserve available for the purpose of extending the term beyond the lapse, then it should be treated, too, as an evidence of indebtedness on account of past premium payments, for, without it, sufficient premiums were not paid to create a reserve in aid of the policy. The words authorizing the amount of the loan to be "deducted from the amount payable under said policy" should, when considered together with the fact that both parties are deemed to have been fully advised as to the provision of the statute, be construed as intending such loan should be deducted from three-fourths of the net value of the policy, for by the provisions of the statute such amount was available "under the policy," for that purpose, that is, for the purpose of paying the loan.

The judgment should be reversed. It is so ordered. *Reynolds, P. J.,* and *Caulfield, J.,* concur.