MARIA M. BOULWARE, Appellant, v. MISSOURI STATE LIFE INSURANCE COMPANY, Respondent.

**St. Louis Court of Appeals, July 16, 1913.**

1. **EVIDENCE: Parol Evidence: Life Insurance: Contradicting Receipt Clause of Policy.** The recitals in an insurance policy as to the payment of premiums are not conclusive, and hence parol evidence is competent to show that premiums in an antedated policy were settled by insured's giving to insurer a lien certificate of indebtedness, equal to the reserve that would have been accumulated on the policy during those years.

2. **LIFE INSURANCE: Nonforfeiture Statute: Antedated Policy: Deducting Loan.** Insured, having an assessment life insurance policy in a company which was absorbed by defendant company, accepted from defendant, in lieu thereof, a policy for the same amount, on the twenty-year payment plan. The policy was antedated ten years, and insured executed a loan certificate to represent the reserve that the policy would have earned had it been in force during the antedated period, which certificate was a lien on the policy, and provided that, in the event of insured's death or failure to make any payment when due, the amount unpaid should become due and be deducted from the amount payable on the policy. Only one premium was in fact paid after the policy was issued and insured died about six years thereafter. *Held*, that in determining whether the policy was in force, under Sec. 6946, R. S. 1909, at the time of insured's death, the loan certificate should be deducted from three-fourths of the net value of the policy. and the balance not being sufficient to purchase extended insurance from the time of the default in the payment of premiums to the time of the death of insured, the beneficiary was not entitled to recover. *Held, further*, that, while the surrender of the old policy was a part of the consideration for the new one, such surrender could not be utilized to the end of creating the reserve necessary to purchase extended insurance so as to make the policy effective, under said section, at the time of the death.

Appeal from Monroe Circuit Court.—*Hon. W. W. Barnes*, Special Judge.

AFFIRMED.

176 Mo. App. 38

*R. S. McClintic* and *Wm. A. Dudley* for appellant:

(1) The recitals of the policy are conclusive and binding on the parties as to the payment of the premiums, and cannot be denied for the purpose of affecting any rights arising on the contract. The court erred in holding the contrary. Rose v. Mo. State Life Ins. Co., 148 S. W. 181; Dobyns v. Ins. Co., 144 Mo. 95; Wishart v. Gerhart, 105 Mo. App. 112. (2) The recitals of the certificate of loan are likewise contractual and control its interpretation. As such it is not subject to contradiction by verbal testimony or otherwise. The court erred in holding the contrary. Carpenter v. Jamison, 6 Mo. App. 216, 75 Mo. 285; Construction Co. v. Hayes, 191 Mo. 248; Tate v. Railroad, 54 Mo. App. 645; Giddings v. Ins. Co., 90 Mo. 272; Cannon v. Boswell, 117 Mo. App. 473. (3) The old policies were unforfeited and the parties to the contract had the right to place their own estimates on their value. 9 Cyc. page 311, par. D. 1-2, page 315, par. D. 3; Bannock v. Magoon, 141 Mo. App. l. c. 320; Houck v. Frisben, 66 Mo. App. l. c. 16; Lamp Co. v. Mfg. Co., 64 Mo. App. l. c. 118. It was error, therefore, for the court to find that the nine premiums paid by their surrender as recited in the policy were in fact forborne by the company. (4) The old policies, as shown by the evidence, were in fact better contracts and worth more in fact than the policy received in exchange therefor. Eliott v. Life Association, 76 Mo. App. 562; Knott v. Ins. Co., 161 Mo. App. 579; Green v. Ins. Co., 159 Mo. App. 271; Ordelheide v. Modern Brotherhood, 158 Mo. App. 677; Folkins v. Ins. Co., 98 Mo. App. 480; Schmidt v. Forresters, 228 Mo. 675. (5) The policy will be construed in support of the indemnity and against forfeiture in case of doubt. Mathews v. Modern Woodmen, 236 Mo. 342; 1 May on Insurance, sec. 175. (6) The certificate of loan was carefully written on defendant's blanks and by the defendant and was intended by the parties to be construed as a loan, which

under the law was not deductible from the reserve in case of lapse (Christianson v. Ins. Co., 160 Mo. App. 486 and cases there cited), and we deny the right of defendant to show by verbal testimony that it was in fact not a loan, and thus nullify this important feature of defendant's contract in an action at law, and with no showing of want of contractual capacity on the part of defendant or fraud or imposition on the part of plaintiff's insured. Walker v. Automobile Co., 124 Mo. App. 628; Insurance Co. v. Wolfson, 124 Mo. App. 286. (7) There is no ambiguity, repugnance or inconsistency in any part of the loan certificate or policy. The parties on considerations satisfactory to themselves made it. It should be construed according to its plain terms, without reference to supposed equitable considerations. As such it is a "loan" such as the policy permits (i. e., from the reserve all premiums paid), and is not deductible under the law, but is nevertheless payable, from dividends or finally from the amount payable under the policy. 2 Bacon Benefit Societies, sec. 325; 1 May on Insurance (3 Ed.), sec. 175, sec. 172 A, note 4; Foglesong v. Ins. Co., 121 Mo. App. 548. (8) The same principles apply in the construction of the rest of the loan certificate in connection with the policy and statute. See also: Fithian v. Ins. Co., 4 Mo. App. 386; Goodwin v. Ins. Co., 73 N. Y. 480; Ins. Co. v. Van Metre, 121 S. W. 438; Mercantile Co. v. Chapman, 78 Mo. 616.

*Jones, Hocker, Hawes & Angert, James C. Jones, Jr.,* and *Frank W. McAllister* for respondent.

(1) In as much as the indebtedness, evidenced by the certificate of loan, was "on account of past premium payments," and as this indebtedness equaled and exceeded three-fourths of the net value of the policy (treating it as a policy on which ten premiums have been paid), there was no "balance" of net value applicable to extend the policy after lapse. Rose v.

Insurance Co., 165 Mo. App. 646; Pavy v. Insurance Co., 125 La. 262; Black v. Insurance Co., 133 Ga. 859; Bank v. Benefit Association, 81 Fed. 935; Omaha Bank v. Insurance Co., 84 Fed. 123; Rose v. Insurance Co., 153 Mo. App. 90; Westerman v. Insurance Co., 196 Mo. 670; State ex rel. v. Vandiver, 213 Mo. 187; Rose v. Railroad, 111 Mo. 25; Endlich on Int. of Stats., sec. 360; Insurance Co. v. Hoge, 21 How. 35; Moran v. Insurance Co., 160 Mo. App. 407; Mooney v. Insurance Co., 80 Mo. App. 95; Black v. Insurance Co., 133 Ga. 859; Pavy v. Insurance Co., 125 La. 262; Webb v. Insurance Co., 134 Mo. App. 576; Bank v. Insurance Co., 84 Fed. 123; Bank v. Insurance Co., 84 Fed. 935. (2) The non-forfeiture law is not applicable because only one payment was made on the policy sued on, and the non-forfeiture law (Sec. 7897, R. S. 1899) is by its letter applicable only when three payments have been made on the policy to which it is sought to be applied.

ALLEN, J.—This is an action on a policy of insurance issued by the defendant company on the life of one Aaron Boulware, in which the plaintiff is designated as the beneficiary. The insured made default in the payment of the premiums on the policy, more than six years before his death, and the suit involves the propriety of the application of the nonforfeiture statute relating to such policies of insurance. The case was tried below before the court, without a jury, resulting in a finding and judgment for defendant, from which the plaintiff has duly prosecuted her appeal to this court.

Pursuant to the request of the parties, the trial court made a written finding of facts, stating its conclusions thereon, which we will here set out in full as follows:

"1. The Safety Fund Life Association was organized in the year 1892, for the purpose of doing a life insurance business on the assessment plan. The

benefit fund from which any insurance was paid or to be paid was to be created by assessment on the members.

"2.   In December, 1892, pursuant to the written application of Aaron Boulware, said Safety Fund Life Association issued to said Boulware a certain certificate of membership number 95, providing for the payment of a benefit of $2000 to Minnie M. Boulware, his wife, upon the death of said Aaron Boulware, conditioned upon the payment of quarterly assessments of $6.70 for a period of four years from the date of the next quarterly assessment (and afterwards of such an amount as should be required by the by-laws of said association, which were made a part of said certificate).   And in September, 1896, pursuant to the written application of said Aaron Boulware, said association issued its certificate of membership, number 2848, providing for the payment of a benefit of $3000 to Maria M. Boulware, his wife, upon the death of said Aaron Boulware, conditioned upon the payment of quarterly assessments of $12.75, until said payments should have been made for five years from January, 1897; and after said date to be reduced to expense element and mortuary requirements; provided no annual payment should be less than $25.50, and provided further that should the total payment required in any one year exceed fifty-one dollars, the safety fund should be used to pay such excess.   That said Aaron Boulware, from time to time, paid all the several assessments that were levied and assessed against certificate No. 95 and 2848, until April 1, 1902, and each was in force on that day.

"3.   The defendant, Missouri State Life Insurance Company, was organized and incorporated March 11, 1902, and became and now is the successor of the Safety Fund Life Association, and assumed all of the outstanding certificates of membership of the said

Safety Life Association, including certificates No. 95 and No. 2848, held by said Aaron Boulware.

"4. That, on the first day of April, 1902, Aaron Boulware, who was then fifty years of age, made his written application to the defendant for a policy of insurance on his life in the sum of $5000, with premiums fixed as of age forty-one, premiums thereon to be fully paid in eleven years which said application is in words and figures as follows, to-wit:

" 'I, Aaron Boulware do hereby apply to the Missouri State Life Insurance Company of St. Louis, Missouri, for an insurance on my life of $5000 on the twenty-payment life of 50 per cent R. P. plan, premiums to be payable annually. I was born on the 22d. day of March, 1852, and desire policy to be issued as of age forty-one. Premiums to be fully paid in eleven years from this date. Make policy payable to Maria M. Boulware, related to me as wife. In consideration of the issuance of the policy of insurance applied for, I hereby surrender to said company all right, title and interest in and to policy of insurance or certificate of membership No. 95 and 2848, issued to me by the said company under the name and style of Safety Fund Life Association; and I agree that in any distribution of surplus accumulations or apportionments of dividends, the principles and methods adopted by the company for the apportionment and determination of the amount equitably belonging to any policy issued on this application shall be conclusive on the insured and upon all parties having or claiming any interest thereunder.

'Dated at Monroe City, Mo. 4/1/1902.

'AARON BOULWARE, applicant.
'Witness, R. A. OGLE.'

"5. The annual premium charged by the defendant for such a policy as applied for by said Aaron Boulware, at age forty-one years, is and was $227.50 and the defendant offered to issue to said Aaron Boul-

ware such a policy, dating the same back to age forty-one years, and forbearing the first nine annual premiums, which, if actually paid, would have aggregated the sum of $2047.50, which would have represented premiums on such a policy by way of premiums from age forty-one to age fifty. That said offer by the defendant to issue said policy was conditioned upon the surrender of said certificates No. 95 and No. 2848, and of the issuance, execution and delivery of said Aaron Boulware's certificate of indebtedness for that part of the first nine premiums which would have constituted the reserve on said policy had the nine premiums been actually paid, which defendant forbore or waived, representing the total reserve out of the premiums on such a policy if paid from age forty-one to age fifty, to-wit, $1336.50; also providing further that said certificate of indebtedness or loan should be and become a lien on the policy issued, No. 9074. That said Boulware on said —— day of April, 1902, accepted said offer of the defendant, including all the provisions aforesaid, and executed his certificate of indebtedness to defendant, which said certificate is in words and figures as follows, to-wit:

" 'This certifies that the Missouri State Life Insurance Company, home office, St. Louis, Missouri, has loaned on the sole security of policy No. 9074, the sum of thirteen hundred, thirty-six and 35/100 dollars ($1336.35), which, with any additional loan, shall be a lien on said policy until paid. Simple interest at the rate of six per cent to be added until the end of the accumulation period of said policy, at which time the profits accruing to it shall be used toward the payment of said loan, and any excess paid in cash or used as set forth in the policy, at the option of the insured. Should the profits not fully pay said loan or loans, the amount remaining unpaid at the time may be continued as a loan, interest as aforesaid, and the dividends accruing on the policy to be thereafter applied to the payment

of said loan. In the event of my death or failure to make any payment when due to said company before said loan is fully paid, the amount remaining unpaid shall become due and be deducted from the amount payable under said policy.

'Dated at Monroe City, Mo. 4/1/1902.

'A. Boulware, the insured.

'Witness, R. A. Ogle.'

"Whereupon, on April 5, 1902, defendant issued to said Aaron Boulware the policy herein sued on, No. 9074, upon the consideration of defendant's surrender of certificates No. 95 and No. 2848 to defendant, and of the further consideration of the execution and delivery of said certificate of indebtedness or loan and for the consideration as set forth in said policy of insurance.

"6. The court further finds that said policy herein sued on recites that it is issued in consideration of $1563.85, said consideration being made up of one cash premium in advance of $227.50, cash then paid by the said insured, and of his certificate of indebtedness hereinbefore set out of $1336.35, it not having been paid in cash to the defendant by the insured. That said policy No. 9074, being policy sued on, was received by said Aaron Boulware and by him retained until his death, to-wit, December 18, 1909. The court further finds that only one premium was ever paid on said policy No. 9074, which was for the year 1902, default having been made in the payment of premium due April 5, 1903, and all subsequent premiums. That said policy contained the condition that it would become null and void for the failure to pay any annual premium, and that said policy has, among other provisions, the following, to-wit:

" 'Number of Policy, 9074. Amount $5000. Age forty-one years.

" 'The Missouri State Life Insurance Company in consideration of the payment in advance of $1563.85,

.being the premium for one year's insurance (including the advance reserve herein, set apart to the credit of this policy) and of the annual payment of $227.50, on or before the 5th day of April, in each year thereafter until premiums for twenty years have been duly paid, or until the prior death of the insured, hereby insures the life of Aaron Boulware, herein called the insured, and agrees to pay to his wife, Maria M. Boulware, if living, otherwise to the insured's executors, administrators or assigns, or to such other beneficiary as may be designated by the insured as hereinafter provided, five thousand dollars, at its office in the city of St. Louis, within sixty days after the receipt of satisfactory proofs of the death of said insured. In the event of the death of the insured within twenty years from the 5th day of April, 1893, and while this policy is in force; the amount payable hereunder will be increased by guaranteed additions, making the total amount payable during any one year as follows: Eleventh year $6563.85 and increasing annually at the rate of $113.75 until the end of twenty years from date of policy.

" 'The premium period of this policy ends on the 5th day of April, A. D. 1913. This insurance is granted as of date April 5, 1893, in consideration of the surrender and cancellation of policies No. 95 and No. 2848, heretofore issued under the name and style of the Safety Fund Life Association and of the application for such policies, as well as the application for this policy, both of which applications are hereby made a part of this contract.

" 'If after three annual premiums (from date of execution hereof) shall have been paid in cash on this policy it shall become void solely by the nonpayment of any premiums when due, its entire net reserve, computed according to the actuary's table of mortality, with interest at four per cent per annum (less any existing indebtedness), on surrender of this policy, at

its home office, shall be applied by the company as a single premium at the company's rates in force at the date of lapse.

" '(1)   To purchase without action of the insured, of a nonparticipating paid-up life policy; or

" '(2) : Upon written application by the legal holder of this policy within thirty days from the date of such nonpayment of premium, to the purchase of nonparticipating term insurance for the original amount insured by this policy.

" 'After this policy shall have been in force for three years from the date of the execution hereof (all premiums having been paid in cash), and which this policy is in full force and effect, the company will at the time loan on the sole security of this policy, its entire net reserve, computed according to the actuary's table of mortality with interest at four per cent per annum (less an existing indebtedness), subject to the rules and regulations of the company, then in force.

" 'This contract is based on receipt of premiums annually in advance, but premiums may be made payable in semiannual or quarterly installments.   Any indebtedness to the company under any provisions hereof or otherwise including any balance of the premiums for the insurance year remaining unpaid will be deducted in any settlement of this policy or of any benefits hereunder.   Should this policy lapse by reason of the nonpayment of any premium it may be reinstated at any time upon the insured furnishing evidence of good health satisfactory to the company and the payment of all arrears and any indebtedness to the company under this contract existing at the time of lapse with interest thereon at five per cent per annum.'

" (7)   The court finds that the plaintiff is the widow and the designated beneficiary in policy sued on, No. 9074.   That all defenses based upon failure to

give notice or make proof of loss were waived in open court at the trial by the defendant.

"(8) The court finds that the net value of the policy of insurance is that part of the premiums paid which is in excess of the carrying of the risk, together with interest accumulations; that the gross premiums paid on the policy sued on was $227.50 in cash as hereinbefore stated, and the insured note or certificate of indebtedness of $1336.50, which represents only one annual premium on the said policy and said certificate of indebtedness.

"The court finds that if the nine premiums which were forborne by the defendant of $227.50 each had been actually paid together with said cash premium paid, then the net value of said policy sued on under the actuaries' combined experience table of mortality with four per cent interest would have been $1501.08, and that three-fourths of said reserve having been applied as a single net premium for extended temporary insurance for the amount payable under said policy of $6450.10, at age fifty-nine, the age of said Aaron Boulware at the date of default of payment of premium due, would have carried said amount for a period of ten years and 201 days, which would have been beyond the date of the death of said Aaron Boulware December 18, 1909. And the court further finds that the net value of said policy sued on, had the nine premiums of $227.50 each, which defendant forbore and which the insured never paid, been in fact paid in cash together with the said cash premium paid, would, computed on the American experience table of mortality at four and one-half per cent have given a premium available for extended temporary insurance sufficient to have carried said policy in force for even a greater period than aforesaid.

"(9) The court finds that the indebtedness represented by the said certificate hereinbefore set out and for $1336.35 was not on account of the past premium

payments and not such an indebtedness as would have entitled the defendant to deduct the same from three-fourths of the net value of said policy had the same had a reserve, but that said certificate was given as a charge against the policy sued on and represented the reserve that said policy would have had if the nine premiums which defendant waived and which the insured nor anyone for him at any time ever paid.

"Therefore, treating the policy sued on as one upon which only one premium had been paid, and the court so treats it, and the policy so recites it, the non-forfeiture law, section 6946 of the Revised Statutes 1909, is by its terms inapplicable.

"The court finds for the defendant."

The questions involved in this appeal are in nowise materially different from those passed upon by this court in Rose v. Insurance Co., 165 Mo. App. 646, 148 S. W. 181. That was an action against this defendant on a policy issued under just such circumstances as those here involved. There the insured effected insurance upon his life in the Safety Fund Life Association, on December 31, 1904, in the sum of three thousand dollars. On October 13, 1902, after the defendant had taken over the assets of that company and assumed its obligations, Rose surrendered to it this policy and accepted in lieu thereof a twenty-payment life policy of the defendant for the same amount. The latter policy provided for the payment of premiums for twenty years only, from October 1, 1892, to October 1, 1912, the annual premium being $113.10 due on or before the first day of October in each year. The policy, however, was antedated *ten* years as if issued in October 1892, thus requiring the annual premium of $113.10 to be paid only from and after the date of its issue to and including October 1, 1912. There the insured was forty-five years of age when the policy was issued to him, but it insured him as of the age of thirty-five. The consideration recited in the

policy was $980.85, and the further payment of $113.10 per annum thereafter. The fact was, however, that the insured paid the first annual premium of $113.10 in cash, and executed a loan certificate on the policy for $867.75. He failed to pay any further premiums thereon, and permitted the policy to lapse on October 1, 1903. The insured died on May 8, 1908.

It will be thus readily seen that the facts of the case before us are in every essential particular the same as those involved in the Rose case; the difference being only as to unimportant details. There, as here, the question to be determined pertained to the application of the nonforfeiture statute to such a state of facts. In either case had in fact all of the annual premiums upon the policy been paid, from the date which the policy bore up to the time of default, sufficient reserve would have accumulated to the credit of the policy to extend the insurance, under the nonforfeiture statute, beyond the date of the death of the insured. In the case before us this would undoubtedly be true had ten whole premiums been actually paid on the policy; and the contention on the part of the appellant is that the policy should be treated as one upon which ten full annual premiums had been paid, and that the amount represented by the loan certificate should be deducted from the proceeds of the policy. This contention however, is disposed of by what we said in the Rose case, supra, on this very question.

The nonforfeiture statute provides a method of computing the net value of the policy, and provides that after deducting from three-fourths of such net value any notes or other indebtedness to the company given on account of past premium payments on the policy, the balance shall be taken as a net single premium for the purpose of extended or temporary insurance. Here, as in the Rose case, to deduct the amount of the loan certificate from three-fourths of the net value or reserve would consume the whole thereof and

leave a deficit. In view of the actual transaction had, that the amount of the loan certificate should be treated as an indebtedness on account of past premium payments and should be deducted from three-fourths of the net value of the policy, was what we held in the Rose case, supra, and we see no reason to depart in any wise from that ruling, the reasons for which are fully set forth in that opinion.

It is urged by appellant that the recitals of the policy are conclusive as to the payment of premiums and cannot be denied for the purpose of affecting any rights arising under the contract. But this cannot be true, for it is elementary that the consideration for the policy may be inquired into. And here an inquiry into the consideration discloses that in fact but one annual premium was paid upon the policy; that the actual payments were not made to the defendant whereby a reserve could have been accumulated to the credit of the policy to extend the insurance to the death of the insured. The only theory upon which it could be said that such a reserve could have been accumulated is that the loan certificate represented an indebtedness to the company on account of past premium payments; and taking it as representing such indebtedness, then the same, under the statute, must be deducted from three-fourths of the net value of the policy and the balance taken as a net single premium for the purpose of extended insurance, and to do so exhausts the net value of the policy.

The lower court found that the indebtedness represented by the loan certificate was not on account of past premium payments and "not such an indebtedness as would have entitled defendant to deduct the same from three-fourths of the net value of said policy had the same had a reserve, but that said certificate was given as a charge against the policy sued on and represented the reserve that said policy would have had if the nine premiums which defendant waived"

had been paid. The court found that these nine premiums were forborne by the defendant, and that, therefore, the policy had no reserve. It therefore treated the policy as one upon which only one premium had been paid, and accordingly held that the nonforfeiture section was, by its terms, inapplicable.

The result, of course, is the same, whether the policy be treated as one upon which but one annual premium had been paid, or whether it be treated as a policy upon which ten annual premiums had been paid and the indebtedness represented by the loan certificate regarded as an indebtedness on account of past premium payments. The nonforfeiture statute (Sec. 6946, Rev. Stat. 1909) applies only where three annual premium payments have been made upon the policy. It is altogether clear, therefore, that in order to here invoke the nonforfeiture statute at all, the annual premium payments for the nine years which the policy was antedated must be regarded as having been paid. Such premiums can only be said to have been paid through the medium of the transaction involving the execution of the loan certificate. Such payment could only be regarded as constructively made, so to speak, and the indebtedness a constructive loan. The purpose of the loan certificate is obvious, for it is not disputed that the company was required to have on hand "in money or money's worth," at the time it issued the policy, the reserve applicable thereto. The certificate of indebtedness in the sum of $1336.35 equaled the amount of this reserve, and was given to cover the same and to fulfill the requirements with respect thereto. To treat the transaction however, as one whereby all of the prior annual premiums are to be regarded as having been paid (which is the only way in which the policy could have actually had a reserve so as to make the nonforfeiture statute applicable), then logically the indebtedness represented by the loan certificate

must be treated as an indebtedness on account of past premium payments.

Much is said by learned counsel for respondent in their brief concerning the surrender of the policies previously held by the insured as constituting a consideration for the issuance of the policy sued on. It is not necessary, however, for us to pursue this subject further than to say that the surrender of these policies was but a part of the consideration for the issuance of the new policy; and that in any event the consideration by way of the surrender of these policies cannot be utilized to the end of creating the necessary reserve upon the policy here sued upon.

Other questions raised need not be noticed. For the reasons given above the judgment of the circuit court should be affirmed. It is so ordered. *Reynolds, P. J.,* and *Nortoni, J.,* concur.