## MARTHA J. POPE, Respondent, v. NEW YORK LIFE INSURANCE COMPANY, Appellant.

Springfield Court of Appeals, January 28, 1916.

1. INSURANCE: Life Insurance: Failure to Make Premium Payments: Statutes. Under the rule for determining the net amount to be applied in purchasing temporary insurance in case of failure to pay premiums on a life insurance policy, only notes or other evidence of indebtedness given on account of past premium payments shall be deducted from three-fourths of the net value of the policy. [Citing Sec. 7897, R. S. 1899; Sec. 6746, R. S. 1909.]

2. ————: ————: Default in Payment of Premiums: Statutes. Where the indebtedness of the insured to the insurer arose on account of a loan made for any other purpose than the payment of past premiums, it cannot be used to diminish the value of the policy going to purchase temporary insurance. [Citing above sections.]

3. ————: ————: Extended Insurance. Where money is borrowed by the insured from the insurer in advance of the premium being due and used in paying such premium, such indebtedness is for past premium payments and in case of default in later premiums is to be deducted from the net premium available to purchase temporary insurance under section 7897, Revised Statutes, 1899, the term "past premium payments" having reference to the time of default and not to the time of making the loan.

4. ————: Life Insurance Policies: Failure to Pay Premiums: Policy Stipulations. Notwithstanding it may be stipulated in a life insurance policy that such policy is incontestable and though there may be no express provision of forfeiture therein contained, yet where the payment of the amount of the policy is conditioned on the payment of the premiums when due, such payments become conditions precedent and the stipulation of incontestability does not apply to failure to pay premiums.

Appeal from Phelps Circuit Court.—*Hon L. B. Wood-side,* Judge.

REVERSED.

*Jones, Hocker, Hawes & Angert* and *James H. McIntosh* for appellant.

*Lorts & Bruer* and *James J. O'Donohoe* for respondent.

STURGIS, J.—This is an action on a policy of insurance on the life of plaintiff's husband, she being the beneficiary. The cause of action is bottomed on the non-forfeiture statute of this State providing for temporary insurance in case of failure to pay premiums, being section 1987, Revised Statutes 1899, now amended section 9646 Revised Statutes 1909. The policy is dated February 27, 1902. The payment of the amount, $6500 in one sum or $10,000 in deferred annual payments, at the death of the insured is conditioned on the payment of the annual premium of $584.60. The first two annual premiums were paid in cash. Four more were paid in whole or in part out of successive loans made by the defendant to the insured. Default was made in the payment of the premiums due February 27, 1908, and no premium was paid thereafter. The insured died January 25, 1909, and this suit was brought September 30, 1914. The plaintiff recovered and defendant appeals.

The petition is based on the fact that this policy is a Missouri contract governed by the non-forfeiture statute above mentioned; that at the time of default in the payment of premiums, three-fourths of the net value of the policy, computed as therein provided, was sufficient when applied as a single premium to purchase temporary insurance to continue the policy in force for a period beyond the insured's death. The defendant concedes this to be true, provided no de-

ductions are to be made from such three-fourths of
the net value because of "notes or other evidence of
indebtedness due the company on account of past
premium payments on said policy" as provided by
said statute. The petition concedes that at the time
of default in paying the premium there was an in-
debtedness due the company amounting to $1830 evi-
denced by a loan agreement signed by the insured and
the beneficiary, and plaintiff offers to deduct this
amount, together with the one unpaid premium and
interest, from the amount of $6500 alleged to be due
on the policy. The defendant, by its answer asserts
that of the amount of the loan evidenced by this loan
agreement the sum of $1392.49 represents "indebted-
ness due the company" evidence of which, to-wit: the
loan agreement, was given "on account of past pre-
mium payments on said policy", and therefore by the
terms of the statute is to be deducted from the three-
fourths of the net value of the policy before such sum
can be applied to the purchase of temporary insurance,
and that the amount to be deducted being practically
equal to the three-fourths of the net value, nothing
was left to purchase temporary insurance, and the
policy lapsed. The plaintiff concedes that such would
be the result if such deduction is made, but denies that
such evidence of indebtedness was given on account
of *past* premium payments on said policy.

The Supreme Court in Smith v. Insurance Co., 173
Mo. 329, 72 S. W. 935, followed by the courts of appeals
in Paschedag v. Insurance Co., 155 Mo. App. 185, 134 S.
W. 102, and Gillen v. Ins. Co., 178 Mo. App. 89, 161 S. W.
667, has established the law to be that under the rule for
determining the net amount to be applied in purchas-
ing temporary insurance in case of failure to pay pre-
miums on a life insurance policy, only notes or other
evidence of indebtedness given on account of past pre-
mium payments shall be deducted from three-fourths

192MA25

of the net value of the policy computed according to the statutory rule. The statute before amended is held to be restrictive in permitting the amount to be applied in the purchase of temporary insurance to be diminished by reason of then existing indebtedness of the insured to the company and limited such deductions to the indebtedness arising on account of past premium payments. If the indebtedness is a loan made for any other purpose it cannot be used to diminish the net value of the policy going to purchase temporary insurance.

The battle, therefore, is waged here to have determined whether sufficient of the insured's conceded indebtedness to the company, evidenced by this loan agreement, to consume the three-fourths of the net value of the policy was given on account of past premium payments on this policy. On this point the evidence shows that after the payment of two premiums in cash, four successive loans were made by defendant to the insured, in connection with the payment of the premium for the years 1904 to 1907 inclusive; that each succeeding loan was in reality an increase of the preceding one, and a consolidation of such preceding loan, which was then cancelled, and the increase into one obligation. The third annual premium becoming due February 27, 1904, the first loan was applied for on February 20, 1904 in the sum of $820, which was applied as follows: $584.60 to pay the annual premium due February 27, 1904, $40.90 to pay advance interest, and $194.50 paid to the insured. The application for this loan was forwarded from St. Louis to defendant at New York, with directions to apply the loan in the manner stated. This loan agreement bears date of February 29, 1904. When the fourth annual premium became due, February 27, 1905, the insured paid $354.85 in cash, leaving a balance due of $229.75. Application was made for the second loan on March 15, 1905, in the sum of $1105, which was disbursed as fol-

lows: $229.75 as part payment of the annual premium due February 27, 1905, $55.25 for interest on such loan, and $820 to pay the prior loan. When the fifth annual premium became due, February 27, 1906, the insured paid $292.60 in cash, leaving a balance of $292 for which the insured gave his note due November 27, 1906. Application for the third loan was made on this last date for the sum of $1456, and was disbursed as follows: $292 to pay the note given in part payment of the annual premium due February 27, 1906, $8.92 for interest, $1105 to pay the outstanding loan and $51.08 was paid to the insured. When the sixth annual premium became due February 27, 1907, the insured paid $302.10 in cash leaving a balance due of $282.50. The application for the fourth loan was made on the 27th day of March, 1907, for $1830, and was disbursed as follows: $282.50 to pay the balance of the premium due February 27, 1907, $91.50 to pay interest, and the balance $1456 to pay the previous loan. In this connection the plaintiff in her argument concedes that of the second loan $229.75 was applied as part payment on a past premium; that of the third loan $292 was applied to discharge the note given in part payment of a past premium and that of the fourth loan $282.50 was applied in part payment of a past premium.

It is apparent, therefore, that if there was, at the time of default, an evidence of indebtedness given on account of past premium payments representing this premium for 1904 then there was sufficient of such indebtedness to be deducted from the three-fourths of the net value of the policy as would practically consume such fund and leave nothing to purchase temporary insurance. The parties here differ as to the construction of that clause of section 1897, Revised Statutes 1899, supra, providing that the net value of the policy "when the premium becomes due and unpaid" shall be calculated according to the rule specified, "and after deducting from three-fourths of such net value any

notes or other evidence of indebtedness given on account of past premium payments on said policy," such net value shall be applied to the purchase of temporary insurance. The defendant insists that the statute speaks as of the time of the lapse and means that the indebtedness to be deducted is such as *then* represents *past* premium payments, while the plaintiff says the term "past premium payments" has reference to the *giving* of the notes or other evidence of indebtedness and that the premium payment must be past due when the obligation evidencing the same is executed.

It seems to us that defendant's construction is the obvious and reasonable one. The fundamental intent underlying this statutory provision seems to be that, instead of forfeiting to the insurer the entire accumulated reserve on a policy in case of default, a fair amount, three-fourths thereof, should inure to the benefit of the insured by way of purchasing temporary insurance, provided the premiums from which the reserve is derived have been actually paid to the company; but if it be found at the time of default that such premiums have not been actually paid but are yet owing to the company as shown by some evidence of indebtedness given on account thereof, then such indebtedness should be deducted therefrom. If the insured has already had the benefit of all or a portion of the reserve in the payment of his past premium, then it is manifestly unfair to again use such reserve in purchasing further insurance. It is clearly shown that the premium due February 27, 1904, was paid, not in cash, but by the use of the reserve on this policy loaned to the insured for that purpose, and the loan agreement evidenced such past premium payment. It ought to make no difference that as a prudent business man the insured sought to and did make arrangements to pay his premium in this way in advance of the date it was due, when the loan applied for was for such purpose and the premium was actually paid by the insured execut-

ing an obligation on account thereof. · Such obligation
thereafter was an evidence of debt *given on ac-
count of past* premium payments. The insurer took
the insured's obligation in payment of this premium
and such obligation was an evidence of debt given on
account of the past premium payment. Of course each
renewal of such obligation or consolidation of same
with another loan for the same or a different purpose
does not change the character of the indebtedness or
prevent such consolidated obligation being evidence
of indebtedness *pro tanto* on account of past premium
payments.

The plaintiff's construction of this statute is a
strained and narrow one, against the purpose and in-
tent thereof, and would require the insured, in order
to make an evidence of indebtedness one for past pre-
mium payments, to let his policy lapse, unless days of
grace are given to make premium payments, so as to
make the premiums past due when the evidence of in-
debtedness is given therefor, and thereby run the risk
of having his policy reinstated, if at all, on more or less
onerous conditions. The trial court found, however,
and the facts so show, that while the insured applied
for this loan before the premium was due, the loan was
made February 27, 1904, on the day such premium was
due, and the loan agreement bears date of February 29,
1904, so that in fact the loan agreement was when *given*
on account of a then past due premium payment on this
policy.

The present construction of this statute is in ac-
cord with what the court said in Smith v. Ins. Co., 173
Mo. 329, 72 S. W. 935, and Rose v. Ins. Co., 165 Mo.
App. 646, 148 S. W. 181, although as plaintiff claims,
such cases may be distinguished from the present case,
and therefore might not be binding upon us. In the
Smith case the court speaks of the assured *borrowing*
by agreement thirty per cent of the premium each year
and paying the balance in cash. Therefore, the assured

borrowed the whole amount of one premium. "This transaction," says the court, "brought the amount of the assured's indebtedness for loans on account of past premiums up to $915.10. Then on May 8, 1896, the assured applied to the company for a loan of cash and the company agreed to lend him $672.10, out of which it would deduct interest on the previous loan up to December 10, 1896, interest on the increased loan up to the same date, and the premium due December 10, 1896, leaving $485.14 to be delivered to the assured in cash, all of which was done. This raised the amount of the indebtedness of the assured to the company to $1587.20, which up to the date of the failure to pay the premium was by interest increased to $1634.92. This includes the $485.14 cash loaned the assured." The court therefore carefully distinguishes the amounts which were borrowed for the purpose and were actually applied to the payment of premiums from the amounts borrowed for other purposes and in effect holds that such former amounts are properly deducted from the three-fourths of the net reserve before applying the same to purchase temporary insurance.

An argument is made that because the policy is stipulated to be "incontestable" and there is no express provision of forfeiture therein, that such policy continued in force whether premiums were paid or not and without regard to the non-forfeiture laws in this state, and that defendant's only right is to deduct the unpaid loan and premiums from the amount of the policy. The case was not prosecuted or tried on any such theory, and besides where, as here, the payment of the amount of the policy is conditioned on the payment of premiums when due, then such payments become conditions precedent and the stipulation of incontestability does not apply to failure to pay premiums. [Metropolitan Life Ins. Co. v. Walton, 25 Ohio C. C. 587; Thompson v. Fidelity-Mutual Ins. Co.

(Tenn.) 92 S. W. 1098, 6 L. R. A. (N. S.) 1039; Jackson v. Mutual Life Ins. Co., 186 Fed. 447, 450.]

The question of our·jurisdiction of this appeal because of defendant's having raised the question of the constitutionality of non-forfeiture statute supra, is disposed of in the case of Mun v. Insurance Co., decided at this term. The result is that the plaintiff is not entitled to recover and the judgment will be reversed.

*Robertson, P. J.,* and *Farrington J.,* concur.