[No. 15065. Department Two. April 16, 1919.]

EMMA LEE MILLAR, *Appellant*, v. WESTERN UNION LIFE
INSURANCE COMPANY, *Respondent*.

JANET ISABELLA MILLAR, *as Executrix etc.*, *Appellant*,
v. WESTERN UNION LIFE INSURANCE COMPANY,
*Respondent*.[1]

INSURANCE (96)—FORFEITURE—NONPAYMENT OF PREMIUM — TERM
INSURANCE LAPSING BY NONPAYMENT. Where a life insurance policy
provided that the advance payment of an annual premium was for
term insurance for one year, and by other provisions it had no
loan or surrender value until after the second annual payment, it
was not an indivisible contract for life, but lapsed as term insur-
ance, on default and expiration of grace for failure to pay the second
annual installment, after due notice and demand and refusal to
revive it according to its terms.

SAME (96). In such a case, a stipulation in the policy for credit
coupons, providing that the first coupon could be used in part pay-
ment of the second annual payment, did not authorize use of the
coupon independent of such payment, or continue the insurance in
force without the payment; and it is immaterial that the coupon
showed that the company collected more than was necessary for
the first year.

Appeal from a judgment of the superior court for
King county, W. G. McLaren, Esq., Judge *pro tem-
pore,* entered April 10, 1918, upon agreed facts, in an
action upon life insurance policies, consolidated for
trial before the court. Affirmed.

*E. P. Whiting,* for appellants.

*Graves, Kizer & Graves,* for respondent.

MOUNT, J.—These two actions were brought to re-
cover upon two life insurance policies. The facts in
the two cases are the same except that the bene-
ficiaries named in the policies are different. The cases
were consolidated for trial, and upon issues joined

[1]Reported in 180 Pac. 488.

were tried to the court without a jury, and resulted in judgment in favor of the defendant. The plaintiffs have appealed.

Because the facts are the same in each case, we shall refer to but one policy. The facts were agreed by stipulation in the lower court. They are, briefly, as follows: On October 7, 1915, the respondent issued its policy of insurance, No. 18563, upon the life of Alexander Millar, naming Flora Millar, mother of the insured, as beneficiary in said policy. The policy was upon what is known as the twenty-year payment plan, and provided for payment of an annual premium of $280.85. The policy contains the statutory provisions as to loans, cash surrender values and extended insurance, and the following provisions relating to the payment of premiums:

"CONSIDERATION. The consideration for this contract is the application herefor, which is made a part hereof and a copy of which is attached to this policy when issued, and the advance payment in cash to the company of an annual premium of two hundred eighty dollars and eighty-five cents, for term insurance for one year ending on the 7th day of October, 1916, and the payment of an equal amount upon said date and annually thereafter until premiums for twenty full years in all shall have been paid, or until the prior death of the insured."

"GRACE IN PAYMENT OF PREMIUMS. In the payment of all premiums hereunder after the first policy year there will be allowed a grace of one month (not less than thirty days), *without interest,* during which time this policy shall remain in full force and effect."

"INDEBTEDNESS. Any indebtedness to the company on account of this policy, including any unpaid portion of the premium for the then current policy year, will be deducted in any settlement under this policy."

"PAYMENT OF PREMIUMS. After the first policy year, premiums hereunder are due and payable in

advance at the home office of the company in Spokane, Washington, but may be paid to any authorized agent of the company producing a receipt signed by the secretary of the company and countersigned by such agent. On any anniversary of this policy the mode of premium payments will be changed by the company, upon due request, from annual to semi-annual or quarterly, or *vice versa,* in accordance with the premium rates in use by the company at the date of issue hereof. No payment of premium or part thereof shall have the effect of continuing this policy in force longer than for the period covered by such payment, except as otherwise provided herein.''

''REINSTATEMENT. After default in the payment of any premium or of any indebtedness or interest thereon, this policy may be reinstated at any time upon production of evidence of insurability satisfactory to the company and the payment of all past-due premiums with interest thereon at a rate not exceeding six per cent per annum from their respective due dates, provided, that any indebtedness to the company under this policy at the date of such default, together with interest thereon to the date of reinstatement at a rate not exceeding six per cent per annum, shall be reinstated as a first lien upon this policy or paid to the company in cash.''

Attached to the policy is a sheet containing nineteen coupons. The first of these coupons recites that it will be accepted

''As $41.80 in part payment of the *second* or any subsequent annual premium on Policy No. 18563 or *pro rata* on semi-annual or quarterly premiums or will credit the amount hereof to the insured hereunder payable as stated in said policy of which this coupon is a part.''

The second coupon is to the same effect, except that it recites it will be accepted as $43.30. The third and succeeding coupons were to be available each succeeding year, at constantly increasing value, for premium

payments, the last coupon reciting that it would be accepted as $64.75. The policy also provided that, by the use of the coupons, the second premium could be paid with $239.05 in cash, the third with $237.55 in cash, and so on, the twentieth requiring a cash payment of $216.10, provided the coupons were used for the payment of premiums.

The policy also contained a table of surrender and loan values of the policy. Under these, the policy had no value at the end of the first year. If the first coupon was not used as part payment of the second premium, the policy would have a surrender value of $45 at the end of the second year, if no coupons were detached; of $400 at the end of the third year; and so on, increasing in value at the end of each year. If the coupons were used in payment of the premiums, the policy had no loan or surrender value at the end of the second year. At the end of the third year the policy had a cash value of $310, or paid-up insurance for $570, or extended insurance for the face of the policy for three years and 312 days. The value increased from year to year. The policy contained no specific provision for a forfeiture in case of a failure of the insured to meet any installments of the premium which might become due under the policy. At the time the policy was issued, namely, on October 7, 1915, Mr. Millar paid the first premium of $280.85. The second premium became due on October 7, 1916. Prior to that date Mr. Millar was notified by a letter from the company of the due date of the premium. The premium was not paid upon that date. By its terms the policy remained in force for thirty days thereafter. On October 27th, Mr. Millar was again notified that the premium had not been paid, and a letter requesting payment was sent to and received by him. In this letter it was stated:

"Surely you wish to continue to receive the protection afforded by your policy. To do so, the premium must be in the home office on or before November 7, 1916.

"Keep your policy in force by sending the premium in the accompanying addressed and stamped envelope . . . better send a check or money order today.

"If there is any way in which Western Union Life can assist you, do not hesitate a moment to let us know. We are ready and willing to serve you."

Thereafter, on November 8th, a letter was addressed to Mr. Millar stating among other things as follows:

"We regret to tell you that with the expiration of the thirty days of grace, allowed by the company for the payment of the premium of $280.85, your policy number 18563 terminated and became of no effect on November 7, 1916. . . .

"We are handing you herewith a health warranty, which, if you are in good health, you may sign and return to us, together with the settlement for the premium referred to above.

"We are ready to make any reasonable arrangement with respect to the payment of the premium should you desire to renew the policy."

On November 16, 1916, Mr. Millar was again notified that the policy could be revived within certain limits, and he was requested to renew the policy. On November 8th the policy was marked lapsed and cancelled upon the books and records of the company. Thereafter, on December 11th, Mr. Millar was again notified that the policy could be revived upon certain limits and he was asked to revive it. Sometime after November 7, 1916, the local agent in Seattle, where the insured at that time resided, called at the office of the insured and urged him to pay the premium on the policy. The insured replied that he was not able to pay the premium at that time but would be able to

do so shortly. The agent suggested that the insured give a note for the premium and on behalf of the company offered to accept a note. The insured replied that he had quit giving notes and that he would probably pay the premium in a few days. This conversation occurred about December 11th. Four days after that time, and while the premium was in default, and after the policy had been marked lapsed upon the books of the company, the insured was murdered in Seattle. Thereafter, the beneficiary named in the policy tendered to the company the past-due premium with interest and demanded payment under the policy. The company refused payment and the action was brought upon the policy.

Appellants contend that, because there is no forfeiture clause for the nonpayment of annual premiums when due, the nonpayment of the premium did not effect a forfeiture and that the company is therefore liable for the face of the policy after deducting the amount of the premium due and unpaid at the time of the death of the insured. Appellants rely upon the cases of *New York Life Ins. Co. v. Statham*, 93 U. S. 24; *Haas v. Mutual Life Ins. Co.*, 84 Neb. 682, 121 N. W. 996, 26 L. R. A. (N. S.) 747; *Ingersoll v. Mutual Life Ins. Co.*, 156 Ill. App. 568; *Friend v. Southern States Life Ins. Co.*, 160 Pac. (Okl.) 457, L. R. A. 1917B 208. These cases hold, in substance, that, where the contract of insurance is an entire indivisible contract for life, and there is no express provision for forfeiture for nonpayment of premiums, the failure to pay a premium does not of itself forfeit the contract. It is argued that the rule in these cases is controlling here because there is no express provision in this policy providing that the contract shall be void if the premium is not paid upon a due date. We think that rule is not ap-

plicable to this case because here the contract of insurance is not an entire indivisible contract for life, but upon the payment of the first premium is by express terms of the contract a term policy for one year. The policy provides, under the heading "Consideration":

"The consideration for this contract is the application herefor . . . and the advance payment in cash to the company of an annual premium of two hundred eighty dollars and eighty-five cents, for term insurance for one year ending on the 7th day of October, 1916."

And under the heading "Grace in Payment of Premiums," it is provided:

"In the payment of all premiums hereunder after the first policy year there will be allowed a grace of one month (not less than thirty days), without interest, during which time this policy shall remain in full force and effect."

The clear intention of these provisions is that, if the second premium is not paid upon its due date or within thirty days thereafter, the policy is not in full force and effect, but lapses as term insurance at the end of the thirty days after the expiration of the year. So we think it cannot be said, under the terms of this policy, as was said in the *Statham* case, *supra,* that the contract is not an assurance for a single year, with a privilege of renewal from year to year by paying the annual premium, but that it is an entire contract of assurance for life, subject to discontinuance and forfeiture for nonpayment of any of the stipulated premiums; because in this policy the first premium payment was for term insurance for the first year only. Thereafter, in order to avail the assured of the benefit of the policy, it was his duty to make the second payment within the time provided in the policy; and if the payment was not made as therein

provided, the policy was subject to be cancelled or lapsed. It was cancelled after due notice to the insured and after he had refused, or at least neglected, to pay the premium. We think it plain from the provisions of the policy hereinbefore quoted that this contract is one of assurance for a year with the privilege of renewal, but without obligation to renew from year to year thereafter by payment of stated annual premiums. The assured assumed no obligation upon accepting the contract of insurance. He did not promise to carry the insurance for any stated period. He paid the first premium before receiving the policy. If he thereafter chose to pay the premiums each year in advance, the respondent was obligated to carry the insurance and give his beneficiary the benefits that the policy afforded, but the insured was free to withdraw or to abandon the contract whenever he chose, and the respondent could not compel him to continue the contract relation longer than he chose or to pay any premium if he did not wish to do so. There is here no entire contract of insurance for life, because the insured did not agree to carry the policy for life or for any other term beyond the first year. He merely purchased the option to take and carry it if, and as long as, he chose to do so. Under the terms of the policy, it was a term policy for the first year and automatically terminated at that time unless the insured sought to keep it alive by paying the second premium. Considering the terms of the policy at the end of the first year, the policy had no surrender value. At the end of the second year, its surrender value was only $45. At the end of the third year, its surrender value increased, and continued to increase thereafter. After the third year, the insured would not lose his policy by defaulting in the payment of any premium. If premiums were paid up to that time,

certain options were secured to the insured in case he failed to pay subsequent premiums. We think it is plain that the policy issued in this case, for the first year at least, was simply a term policy; and that, if the premium was not paid at the end of the year or within thirty days thereafter, as provided in the policy, the policy did not remain in force and effect, but was subject to revival only upon payment of the premium. Under a policy such as this, it was said, in *Union Mut. Life Ins. Co. v. Adler,* 38 Ind. App. 530, 73 N. E. 835, 75 N. E. 1088:

"By the payment of the first premium the insured effects an insurance upon his life for one year, and purchases a right to continue that insurance from year to year during life at the same rate. Whether he will continue or not is optional with him. The premium for the first year pays for the risk during that year, and for the right to subsequent insurance; but there is no obligation to pay further premiums. They do not constitute a debt."

And in *Pope v. New York Life Ins. Co.*, 192 Mo. App. 383, 181 S. W. 1047, it was said:

"An argument is made that because the policy is stipulated to be 'incontestable,' and there is no express provision of forfeiture therein, such policy continued in force whether premiums were paid or not and without regard to the non-forfeiture laws in this state, and that defendant's only right is to deduct the unpaid loan and premiums from the amount of the policy. The case was not prosecuted or tried on any such theory, and besides where, as here, the payment of the amount of the policy is conditioned on the payment of premiums when due, then such payments become conditions precedent and the stipulation of incontestability does not apply to failure to pay premiums."

And in *Tigg v. Register Life & Annuity Ins. Co.*, 152 Iowa 720, 133 N. W. 322, it was said:

"We are of the opinion that the term insurance had terminated before the insured's death, and that the contract was never converted into a life policy by payment of the second premium during the term, or within thirty days after it became due, and for this reason the court rightly dismissed the petition."

In the case of *Wick v. Western Union Life Ins. Co.*, 104 Wash. 129, 175 Pac. 953, which involved a policy of the same company substantially like the one before us, we said, when considering the character of the policy:

"Clearly these two features, 'Consideration' and 'Grace in the Payment of Premiums,' make the contract one of term insurance; that is, insurance in force during the term or period for which a consideration or premium has been paid and the grace period of thirty days. It is so declared by the words *during which time this policy shall remain in full force and effect*,' which words, of themselves, are at once useless unless they constitute a limitation as to time upon the vitality of the contract."

We are of the opinion, therefore, that for at least the first year of this policy it was for term insurance, and that, if the insured desired to avail himself of the privilege of continuing the insurance, it was necessary to pay the second premium within the time stated. He was given due and ample notice of the fact that his premium was in default. He was notified after the policy had been marked lapsed upon the books of the company that he might reinstate the policy upon certain conditions. He was urged to reinstate the policy by complying with the conditions and paying the premiums, and he declined to do so.

It is stipulated that, if the first coupon attached to the policy had been applied to the purchase of extended insurance, such payment would have carried the policy in force two hundred and seventeen days

after October 7th, or after the death of the insured, and appellants argue that the coupon should have been so applied. It is enough to say that this coupon was not available to the insured except in part payment of the second yearly premium. It could not be used independent of such payment. The insured, after repeated requests, refused to avail himself of the use of the coupon.

Appellants also argue that, because these coupons might be used in part payment of subsequent premiums, the company collected more than necessary to pay for insurance for the first year, and for that reason the policy should not be permitted to lapse. The fact that the first premium was more than the cost of insurance is entirely immaterial, because the parties agreed upon the amount of the premium and upon the manner and conditions of the use of the coupons, and the insured refused to avail himself of that use.

There must be some time when an insurance policy may be lapsed for failure of the insured to comply with the terms of his contract, otherwise the policy must continue indefinitely without power of the insurer to terminate it unless there is an express provision for forfeiture. That time must be the time when the parties have agreed that the payment of the premium shall not continue ''the policy in force longer than the period covered by such payment.''

We think, upon the facts in the case, as well as upon the law, the superior court correctly held that the policy had lapsed at the time of the death of insured and, therefore, there was no liability upon the company to pay the policy.

The judgment appealed from is therefore affirmed.

CHADWICK, C. J., FULLERTON, PARKER, and HOLCOMB, JJ., concur.