Mary WALKER, Appellant,

v.

**FEDERAL KEMPER LIFE ASSURANCE COMPANY,** Appellee.

No. 04–91–00163–CV.

Court of Appeals of Texas, San Antonio.

Jan. 29, 1992.

Rehearing Denied March 25, 1992.

---

Michael A. Chovanec and R. Wes Johnson, Chovanec & Johnson, Inc., San Antonio, for appellant.

Thomas H. Crofts, Jr., Crofts, Callaway & Jefferson, Ruth Greenfield Malinas, Ball and Weed, and Robert Kelly, Groce, Locke & Hebdon, San Antonio, for appellee.

Before CHAPA and BIERY, JJ., and GERALD T. BISSETT, Assigned Justice.

## OPINION

GERALD T. BISSETT, Assigned Justice.[1]

This is an appeal by Mary Walker (hereafter "Mary") from a take nothing judgment, following a jury trial, rendered in favor of Federal Kemper Life Assurance Company (hereafter "Kemper") which denied her claim to death benefits under a $100,000 life insurance policy issued to her late husband Jimmy Walker (hereafter "the insured"), who died on January 13, 1987. The principal issue is whether the policy has lapsed for failure to pay the monthly premium on December 1, 1986, when it was due. We hold that the policy had lapsed and, therefore, affirm the judgment of the trial court.

Mary, in addition to suing Kemper to recover death benefits under the policy, also sought a recovery of damages for violations of the Texas Insurance Code and the Deceptive Trade Practices Act. She pled that the policy was in full force and effect and had not terminated at the time of the insured's death. Alternatively, she pled that if the policy had terminated Kemper had waived the termination. Kemper defended by pleading that the policy was not in force on the date of the insured's death because all premiums were not paid during the life of the insured as required by the express terms of the policy, and that it had not waived the termination of the policy since the premium which was due on December 1, 1986 was not paid when due, nor was it paid within the 31–day grace period as provided by law and by the terms of the policy.

The facts of this case are largely undisputed. Kemper issued a life insurance policy on the life of the insured in November of 1982; Mary was named beneficiary. The policy provided for payment of premiums at monthly, quarterly or annual intervals. The insured elected to pay premiums monthly. The premiums were paid under Kemper's Pre–Authorized Draft Law, whereby Kemper would draw a draft on the insured's designated bank account for the monthly premium as it became due. All premiums were payable in advance and were due on the first day of the month. All premiums due were paid through November 1, 1986, resulting in the policy being in force through November 30, 1986. Kemper drafted on the insured's bank accounts for the premium ($66.41) that was due on December 1, 1986. This draft was not paid by the bank and was returned to Kemper on December 16, 1986, with the notation "PAYMENT STOPPED" thereon; the December 1, 1986, premium was never paid thereafter by the bank, the insured, or anyone else.

Mr. John Scott, President and Chief Executive Officer of Kemper at the time of trial, and apparently a Vice President who had charge of "premium accounting functions" in December, 1986, and January, 1987, was called as a witness by Mary. When asked to explain the meaning of that portion of the letters from the premium accounting department of Kemper, dated January 13, 1986, reading:

> As this draft has been returned, we have discontinued drafting your checking account and have reversed this premium from your policy.

Mr. Scott replied:

> I would guess that it means that a check was received or a draft of some sort was received and for some reason that draft was not—there were no funds for that, so we reversed the accounting procedure.

Mr. Scott further testified in response to the questions asked by counsel for Mary:

---

1. Assigned to this case by the Chief Justice of the Supreme Court of Texas pursuant to TEX. GOV'T CODE ANN. § 74.003 (Vernon 1988).

Q. Does this mean that the company accepted the draft in the payment of the premium?

A. Initially?

Q. Yes.

A. The first time around?

Q. Yes.

A. Yes.

Q. And then subsequently the transaction was reversed because the item was not paid, correct?

A. I believe that is correct.

\*    \*    \*    \*    \*    \*

Q. Do you know whether there was an attempt to collect the draft that was unpaid in this case?

A. I don't know that for a fact, but I presume that there were. That is our normal process is to try to go back and collect the money, give the insured a chance to pay their premiums if they want to.

Q. Is it the same as if the premium had never been paid as far as Kemper is concerned?

A. If the premium is reversed, there has been no money changing hands, so it would be the same as never having received a premium ... that is from an accounting standpoint.

\*    \*    \*    \*    \*    \*

The policy in question provided in relevant part:

The insurance under this policy is granted in consideration of the application and the payment of a premium due on the policy date. The premium rate is shown in the Policy Specifications for the period of time you selected in the application. Similar premiums on or before the beginning of each succeeding period of time are required as shown.

\*    \*    \*    \*    \*    \*

Premiums must be paid while the insured is alive for the time shown in the Policy Specifications.

\*    \*    \*    \*    \*    \*

Premiums are payable in advance in the amounts and in the intervals shown in the Policy Specifications. Subject to our minimum, premiums may be paid each year, each six months, each three months or each month. You may change the frequency of premium payments by paying the new premium rate on or before the due date. The entire premium paid, on the basis selected, is deem fully earned on the due date.

\*    \*    \*    \*    \*    \*

A grace period of thirty-one days will be allowed for payment of each premium after the first. This policy will continue in force during the grace period. If the insured dies during the grace period, the unpaid premium will be deducted from the proceeds.

The policy further provided that it could be "reinstated at anytime within 5 years after default" if certain requirements were met. None of the requirements were met by the insured during his lifetime. The policy also contained "NON–FORFEITURE PROVISIONS." None of those provisions are applicable in this case. The policy did not contain any express provision for automatic termination (forfeiture) in the event the late payment of premium was not paid during the 31–day grace period.

Mary contends that Kemper, when it drafted on the insured's bank account for the premium due on December 1, 1986, had the effect "of keeping the policy from lapsing on the books of the company"; that it accepted the draft in payment of the premium; that since "there was no pleading or evidence" that Kemper ever declared this policy forfeited for nonpayment, the policy was in force and effect on the date of the insured's death; that she was entitled to the death benefit ($100,000.00); and that Kemper tried to "collect" on the draft by virtue of the language in the addressed letter, dated January 13, 1987, from Kemper to the insured, reading as follows:

We will need a remittance of $132.82 prior to 01–30–87 in order to begin billing you on a direct quarterly basis. Currently, your policy is paid to December 01, 1986. Please note if the premium remains unpaid 31 days after the due date, your policy will lapse.

If you wish to resume paying your premiums via the Pre–Authorized Check Plan, please contact our office for the necessary requirements. We will be happy to assist you.

The representative of the insured's estate sent a check to Kemper, dated January 22, 1987, in the amount of $132.82 (in payment of the premiums due on December 1, 1986, and January 1, 1987). This check was not accepted by it as payment of the premium for the reason that the policy lapsed for nonpayment of the premium, and since "the insured died past the 31–day grace period, ... he did not have insurance protection under this contract at the time of his death."

At the pre-trial hearing on Kemper's motion in limine, there was a discussion as to whether the policy terminated under its own terms as a matter of law. Counsel for Mary stated to the trial court:

> I mean, it's going to be a totally different lawsuit if the court finds that this policy terminated as a matter of law as opposed to if this policy did not terminate. Because if it terminated as a matter of law, then this is going to be a waiver or acceptance of premium case. If it did not terminate, it's going to be a bad faith insurance case....

Whereupon, the trial court ruled that the policy had terminated as a matter of law.

Counsel for Mary then filed a written motion requesting the trial court to reconsider its oral ruling "that the insurance policy in question terminated prior to the death of Jimmy Walker" and that the court "rule that the insurance policy did not terminate prior to the death of Jimmy Walker." The record does not reveal that counsel for Mary excepted to the oral ruling following its being made, or that he presented the motion to reconsider to the trial court and obtained a ruling thereon. Therefore, any complaint about the ruling has been waived and has not be preserved for appellate review. The trial court submitted questions to the jury inquiring whether Kemper waived "any right it may have had to claim that the insurance policy had lapsed prior to the death of Jimmy Walker," and whether Kemper failed "to act in good faith and deal fairly in processing the claim of Mary Walker." The jury answered both questions in Kemper's favor.

Mary claims in her first point of error that "the trial court erred in denying plaintiff (Mary) recovery on Jimmy Walker's policy because the policy did not provide that it would automatically forfeit for nonpayment of a single monthly premium." Mary argues that "since there was no provisions for this policy to forfeit *ipso facto* and there was no pleading or evidence that Kemper ever declared this policy forfeited for nonpayment, the policy was in force and effect on the insured's death," and that she was entitled to the death benefits. We disagree.

■ As a general rule, the failure to pay premiums when due causes the insurance policy to lapse and become ineffective. *Spyra v. Government Personnel Mut. Life Ins. Co.*, 236 S.W.2d 218, 220 (Tex.Civ. App.—San Antonio 1951, writ ref'd n.r.e.); *Baker v. Penn Mut. Life Ins. Co.*, 617 S.W.2d 814, 815 (Tex.Civ.App.—Houston [14th Dist.] 1981, no writ).

■ In addition to the provisions in the policy, above quoted, the policy also contained detailed provisions to the effect that the insured may avoid "forfeiture" for nonpayment by electing a premium loan option. Although the policy had not yet accrued a cash value, it stated that an accrued cash value would automatically pay a delinquent premium in order to avoid "forfeiture" for nonpayment. The clear import of these provisions is that nonpayment of a premium results in forfeiture.

The Texas Supreme Court addressed the sufficiency of policy language in *Southland Life Ins. Co. v. Hopkins*, 244 S.W. 989 (Tex.Comm'n App.1922, judgment adopted). There, the court held that the following provisions in a life insurance policy resulted in automatic termination when the grace period expired:

> [E]xcept as herein provided, the payment of the premium or installments thereof, shall not maintain the policy in force

beyond the date when the next payment or installment thereof is payable. A grace of thirty-one days without interest shall be granted for the payment of every premium after the first, during which time the insurance shall continue in force. If death occurs within the period of grace, the unpaid premium for the then current policy year shall be deducted from the amount payable hereunder.

*Id.* at 989–90.

The Commission of Appeals reversed the court of civil appeals' decision[2] that the policy language was insufficient for termination. In holding that the insurance remained in effect despite the nonpayment of premiums, the court of civil appeals failed to consider all parts of the insurance contract, focusing instead on what it deemed to be the absence of "express provisions that upon default in the payment of premiums the policy is *ipso facto* forfeited." In reversing that decision, the Commission of Appeals stated:

Regardless of whether the policy were a whole life or term policy, default in payment of the annual premiums in advance on or before the very day upon which they became due, or upon which the period of grace allowed therein expired, would *ipso facto* terminate all liability upon the policy, subject only to the right of reinstatement upon proof of insurability and payment of premiums ... 'The time of payment in such policy is material, and of the essence of the contract; and a failure to pay involves equity.' *New York Life Ins. Co. v. Statham,* 93 U.S. 24, 23 L.Ed. 789 (1876); *Iowa Life Ins. Co. v. Lewis,* 187 U.S. 335, 23 S.Ct. 126, 47 L.Ed. [204] (1902).

*Id.* 244 S.W.2d at 990.

The Commission of Appeals' decision in *Hopkins* is in accord with decisions in other jurisdictions. *See Jackson v. Mutual Life Ins. Co. of New York,* 186 F. 447 (8th Cir.1911), where the court said:

It is thus seen the promise to pay is conditioned upon the premiums being paid as and when due. The fact that no express provision of forfeiture is made is

of no importance. The obvious and necessary interpretation of the contract, if the business of insurance is to be conducted at all, is that the obligation of the company to pay the amount promised depended upon the payment of the premiums reserved. If the premiums were not paid, the obligation, according to the plain import of the contract, ceased.

*Id.* at 448.

*See also, Pope v. New York Life Ins. Co.,* 192 Mo.App. 383, 181 S.W. 1047 (1916), where the court stated:

An argument is made that because the policy is stipulated to be 'incontestable,' and there is no express provision of forfeiture therein, such policy continued in force, whether premiums were paid or not and without regard to the nonforfeiture laws in this state, and that defendant's only right is to deduct the unpaid loan and premiums from the amount of the policy. The case was not prosecuted or tried on any such theory, and besides, where, as here, the payment of the amount of the policy is conditional on the payment of premiums when due, then such payments become conditions precedent, and the stipulation of incontestability does not apply to failure to pay premiums.

*Id.,* 181 S.W. at 1050.

The policy reasons for forfeiture on nonpayment of premiums were articulated in the case of *New York Life Ins. Co. v. Statham,* 93 U.S. 24, 23 L.Ed. 789 (1876), where it was said:

[P]romptness of payment is essential in the business of life insurance.... Delinquency cannot be tolerated nor redeemed, except at the option of the company.... [T]ime is material and of the essence of the contract. Nonpayment at the day involves absolute forfeiture if such be the terms of the contract.... Courts cannot with safety vary the stipulation of the parties by introducing equities for the relief of the insured against their own negligence.

*Id.,* 93 U.S. at 31, 23 L.Ed. at 791.

The court said in *Home Beneficial Ass'n v. Clark,* 152 Va. 715, 148 S.E. 811 (1929):

2. *See* 219 S.W. 254 (Tex.Civ.App.—Amarillo 1920), *rev'd* in 244 S.W. 989.

In the policy of insurance it was provided that the premium should be paid on or before Monday of each week, but that should the insured die, when arrears in payments have not exceeded four Mondays, the association would still be liable. This grace extension expired on January 10, the day before Blanche Matthews died. Its nonpayment brought the policy to an end, unless some reason valid in law can be shown for the nonapplication of the general rule.

*Id.*, 148 S.E. at 813.

■ The payment of the premium in accordance with the provisions of an insurance policy is a condition precedent to the establishment of liability of the insurer. *Zuniga v. Allstate Ins. Co.*, 693 S.W.2d 735, 738 (Tex.App.—San Antonio 1985, no writ); *Schultz v. American Nat'l Ins. Co.*, 142 S.W.2d 275, 277 (Tex.Civ.App.—Beaumont 1940, writ dism'd); *National Aid Life Ass'n v. Driskill*, 138 S.W.2d 238, 240 (Tex.Civ.App.—Eastland 1940, no writ).

Under the Texas decisions making payment of premiums a condition precedent, the essential inquiry is whether the policy, as a whole, conditions the receipt of benefits on the payment of premiums. The policy on the life of the insured makes the timely payments of premiums, as extended by the 31–day grace period, a condition precedent to Kemper's (the insurer) liability. Consequently, we hold that the trial court correctly rendered judgment that Mary Walker take nothing, because it is undisputed that, at the time of the insured's death (January 13, 1987), the premium was in default and the grace period had expired. The first point is overruled.

Mary asserts in her second point of error that "the trial court erred in denying plaintiff recovery on Jimmy Walker's policy because the affirmative defense of forfeiture was waived (by Kemper)." We do not agree. She argues in her brief that Kemper's affirmative defense that the policy terminated for non-payment of the December 1, 1986, premium, "was not conclusively established under the evidence; it was the obligation of the defendant to obtain a favorable jury answer on the question of nonpayment"; and since Kemper failed to request that a question in its theory of nonpayment be submitted to the jury, that it "waived this ground of defense"; therefore, "judgment should have been rendered for Mary on the policy." We disagree.

■ At trial, Mary's position that there was no forfeiture as a matter of law because the policy did not expressly provide for termination (forfeiture). She did not plead or contend the policy was ambiguous or that a fact issue existed on the subject of forfeiture. She apparently contends in this appeal that there was a disputed issue of fact with respect to termination and that it was waived by Kemper by not complaining of its omission from the trial court's charge to the jury. We do not agree. Kemper, in its answer, specially denied that all premiums were paid when due during the life of the insured, "as required by the express terms of the policy," and asserted that since the policy premiums were not paid by the insured prior to his death that "the contract of insurance was without consideration on the date of the insured's death." Kemper further pleaded that "the insurance coverage on the life of Jimmy Walker terminated before his death for nonpayment of premiums." Kemper's pleadings were sufficient to raise the affirmative defense of termination or forfeiture. As already noted, the jury found that Kemper did not "waive any right it may have had to claim that the insurance policy had lapsed prior to the death of Jimmy Walker."

■ According to Mary's contention in this Court, Kemper's role in the pre-authorized draft arrangement, in and of itself, created a fact issue of "payment" of the December 1, 1986, premium. Her argument is that Kemper's preparation of the draft (and commensurate record entries) amounts to some evidence of "payment" even though, as a result of the "stop payment" order, the insured's bank could not, and did not, pay the draft and it was destined to be returned unpaid. The present argument that there was a fact issue cannot be countenanced because litigants are restricted on appeal to the theory on which

the case was tried. *Davis v. Campbell*, 572 S.W.2d 660, 662 (Tex.1978); *Furnace v. Furnace*, 783 S.W.2d 682, 684 (Tex.App.—Houston [14th Dist.] 1989, writ dism'd w.o.j.). During pre-trial hearings on the parties' motions in limine, Mary's counsel admitted that whether the policy lapsed for nonpayment of the December 1, 1986, premium was a question of law. The following exchange took place between counsel for Mary and the court at the pre-trial hearing:

> COUNSEL: [I]t is—either the policy lapsed or it didn't lapse.
>
> THE COURT: But isn't that a question of law?
>
> COUNSEL: Yes, sir, absolutely it is a question of law.

This admission by counsel necessarily meant that nonpayment was undisputed. Furthermore, counsel conceded the insured's obligation to pay the delinquent premium and admitted that the pre-authorized draft had not been honored.

Mary's admission before the trial court that lapse was a question of law is necessarily inconsistent with her appellate argument that Kemper waived this defense by failure to secure jury findings as to nonpayment. Lapse could only be a question of law if there was no fact issue on nonpayment, because nonpayment was the event in this case that would have caused the policy to lapse.

It is undisputed from the evidence that the December 1, 1986, pre-authorized draft was returned to Kemper marked "payment stopped." Mary admitted that since the draft was not paid and there was no evidence that Kemper received any cash through banking channels for the December 1, 1986, premium, that premium payment was not made. It is also undisputed that, prior to the insured's death, no attempt was made to pay the December 1, 1986, premium.

In her brief, Mary lists five bits of evidence that she claims raise a fact issue on whether the December 1, 1986, pre-authorized check had been accepted by Kemper:

1. Kemper's internal accounting system of crediting the insured's account with a payment on the day a pre-authorized check was issued;

2. Kemper's delay in reversing the payment from its books until January 9;

3. the fact that Kemper did not notify Jimmy Walker of the dishonored check until the letter of January 13, 1987;

4. Kemper's retention of the unpaid draft; and

5. Kemper's policy 'to attempt to collect on returned checks and drafts.'

None of this evidence raises a fact issue on payment as a matter of law.

Crediting a check on an insurance company's books does not, as a matter of law, constitute unconditional acceptance of a check as payment. Similarly, the subsequent reversal of the payment from Kemper's books in no way indicates that the pre-authorized check had been unconditionally accepted by Kemper. In fact, the reversal, which is nothing more than an accounting entry, indicates just the opposite.

The fact that Kemper did not notify the insured of the dishonored pre-authorized draft is irrelevant since neither the insurance contract nor Texas law requires Kemper to notify the insured when a premium has not been paid. *See Shindler v. Mid–Continent Life Ins. Co.*, 768 S.W.2d 331, 333 (Tex.App.—Houston [14th Dist.] 1989, no writ). The undisputed evidence also shows that such a stop payment order would necessarily have been initiated by the insured.

Kemper's retention of the unpaid draft is likewise of no evidentiary consequence. Kemper's January 13, 1987, letter to the insured establishes that Kemper had no intention of attempting to collect on the draft. Moreover, the company's policy with regard to drafts on which payment had been stopped was *not* to attempt to collect on the draft itself.

Finally, Kemper's policy of attempting to collect checks and drafts which were returned for "insufficient funds" is inapplicable here because the draft in the instant case was returned because of a "stop payment" order. The record conclu-

sively establishes that drafts and checks which were returned marked "stop payment" were handled differently from those returned for "insufficient funds."

There is no evidence that Kemper accepted the December 1, 1986, pre-authorized draft unconditionally.

The Supreme Court of Texas said in *Texas Mut. Life Ins. Ass'n v. Smartt,* 131 Tex. 227, 114 S.W.2d 528 (1938):

It is well settled in this state that the mere sending of a check will not prevent a forfeiture; it must be unconditionally accepted.

*Id.,* 114 S.W.2d at 529.

In *Texas Mut. Life Ins. Ass'n v. Tolbert,* 134 Tex. 419, 136 S.W.2d 584 (1940), the Supreme Court stated:

It is a universal rule of law that in the absence of an agreement to the contrary, the delivery of a check to the creditor and his acceptance of it is not payment of the debt or obligation until the check has itself been paid, and that when the check is not paid, it may not be said to have constituted payment of the debt or obligation for which it was given. Moreover, this rule extends as well to transactions falling within the purview of insurance law, which contemplates that insurance premiums are ordinarily to be paid in cash, and that in the absence of a different intention or agreement, the giving of a check therefor will not operate as payment.

*Id.,* 136 S.W.2d at 588–89.

In the case at bar, there was no conditional acceptance of the draft by Kemper as payment of the December 1, 1986, premium.

█ Furthermore, if there was any error in the court's ruling that the policy terminated as a matter of law (for failure of the insured to pay the premium that was due on December 1, 1986, or during the 31–day grace period thereafter), counsel for Mary invited that error by insisting that the trial court rule on the question of whether the policy lapsed as a matter of· law at the pre-trial hearing. *See Northeast Texas Motor Lines, Inc. v. Hodges,* 138 Tex. 280, 158 S.W.2d 487, 488 (1942); *Ramos v. Horton,* 456 S.W.2d 565, 567 (Tex. Civ.App.—El Paso 1970, no writ). With counsel having invited the court to put the case in that posture, Kemper had no procedural burden to complain that the subject was not covered in the charge, because issues resolved as matters of law are not to be submitted to the jury. *See ITT Commercial Fin. Corp. v. Riehn,* 796 S.W.2d 248, 253 n. 3 (Tex.App.—Dallas 1990, no writ); *Barton v. Davis,* 441 S.W.2d 299, 300–01 (Tex.Civ.App.—El Paso 1969, writ ref'd n.r.e.).

Kemper did not waive the legal effect of the December 1, 1986, premium not being paid. The second point is overruled.

In the third point of error, Mary contends that the trial court erred in refusing to submit her tendered Special Questions concerning her theory that Kemper became the insured's agent by agreeing to prepare and submit pre-authorized drafts for payment of his premiums. Apparently, Mary is complaining of the failure of the trial court to submit her requested Questions Nos. 9 and 10.

Requested Question No. 9 asked if Kemper acted as the agent of the insured "concerning the drafting of his University Credit Union account for pre-authorized premium drafts." Question No. 10 was conditionally submitted on an affirmative answer to Question No. 9 and inquired if Kemper breached its fiduciary duty as agent by failing to disclose to the insured "prior to his death" that the pre-authorized premium draft had been returned by the credit union unpaid. Mary relies upon Kemper's Pre–Authorized Check Plan ("the Plan"), whereby the insured was permitted to pay his monthly premiums by means of drafts drawn by Kemper on his account in the University Credit Union (heretofore referred to as "the bank").

█ There is no ambiguity in the Plan. When, as here, the existence of an agency relationship depends upon the interpretation of an unambiguous document, the issue is one of law to be determined by the court. *Norton v. Martin,* 703 S.W.2d 267, 272 (Tex.App.—San Antonio 1985, writ

ref'd n.r.e.); *Minneapolis–Moline Co. v. Purser*, 361 S.W.2d 239, 241 (Tex.Civ. App.—Dallas 1962, writ ref'd n.r.e.). There was no reason to submit the question of agency to the jury.

Essential to an agency relationship is the principal's "right to assign the agent's task and to control the means and details of the process by which the agent will accomplish the task." *Webster v. Lipsey*, 787 S.W.2d 631, 635 (Tex.App.—Houston [14th Dist.] 1990, writ denied). Consequently, even if a person acts for or accommodates another, if the accommodating person is not under that person's control, the relationship of agency does not exist. *Daily Int'l Sales Corp. v. Eastman Whipstock, Inc.*, 662 S.W.2d 60, 64 (Tex.App.—Houston [1st Dist.] 1983, no writ). There is no evidence in the instant case that the insured was under the control of Kemper, nor is there any evidence that Kemper was assigned the task of ensuring that the premium was timely paid or that the insured had the right to control the manner in which Kemper responded to the stopped payment. Agency does not exist in this case.

Even if it is assumed that an agency relationship existed between the insured and Kemper because of the Plan, whether there was a duty to notify the insured of any unpaid drafts would have been a question of law to be decided by the court, not by the jury. *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990). Therefore, since it is undisputed that Kemper did not notify the insured of the "returned" or "stop payment" of the December 31, 1986 draft, there would have been no need to submit Question No. 10 to the jury, if the court had found the existence of such duty. *Hughett v. Dwyre*, 624 S.W.2d 401, 403–04 (Tex.App.—Amarillo 1981, writ ref'd n.r.e.).

The return of the draft by the University Credit Union to Kemper cannot aid Mary insofar as payment of the December 1, 1986, premium is concerned. This is so even though at the time of receipt of the draft Kemper entered "payment" on its books. Neither Kemper nor the University Credit Union was agent for the insured with regard to payment of premiums. *See, Tolbert*, 136 S.W.2d at 589.

By definition, a fiduciary, as Kemper is claimed to be, is a person who binds himself to subvert his own interest to those of his principal. If the relationship between two parties does not involve the element of a solely subordinated interest, as is the case here, it is not a fiduciary relationship. *Pickens v. Hope*, 764 S.W.2d 256, 267–68 (Tex.App.—San Antonio 1988, writ denied). The Plan in the case before us in this appeal does not create a fiduciary relationship as a matter of law.

The trial court properly refused to submit Mary's requested "agency" and "fiduciary duty" Questions Nos. 9 and 10, because they concerned matters of law only. Neither agency nor fiduciary duty is supported by evidence. Moreover, there is nothing in the record which indicates that Kemper's asserted breach of fiduciary duty, if any, caused the policy to terminate. The third point is overruled.

Mary asserts in her fourth point of error that the trial court erred in refusing to submit her "tendered special question concerning her theory that Kemper expressly waived its right to insist on timely payment of the December 1 premium." Evidently, the complaint is directed to the refusal to submit Requested Question No. 2 which read:

Did the January 13th letter from Federal Kemper Life Assurance Company to Jimmy Walker extend the due date for payment of the December 1, 1986 premium to January 30, 1987?

Instead, the trial court submitted, in accordance with Mary's request, the following question (No. 1):

Did Federal Kemper Life Assurance Company waive any right it may have had to claim that the insurance policy had lapsed prior to the death of Jimmy Walker? Consider only the conduct, if any, of Federal Kemper Life Assurance

Company which occurred prior to the death of Jimmy Walker.

As before state, the jury answered: "No."

Texas Rules of Civil Procedure 278 states, in relevant part, "failure to submit other and various phases or different shades of the same question" shall not be reversible error. Following this rule, Texas courts have repeatedly held that a trial court properly refuses to submit the same theory in several different ways. *See, Holmes v. J.C. Penney Co.,* 382 S.W.2d 472, 473–74 (Tex.1964); *Jordan v. Ortho Pharmaceuticals, Inc.,* 696 S.W.2d 228, 235 (Tex.App.—San Antonio 1985, writ ref'd n.r.e.); *Braugh v. Phillips,* 557 S.W.2d 155, 158 (Tex.Civ.App.—Corpus Christi 1977, writ ref'd n.r.e.). These holdings are based on the principle that the trial court should submit to the jury only the controlling issues in a case. *See also, Northeast Texas Water Lines v. Hodges,* 138 Tex. 280, 158 S.W.2d 487 (Tex.Comm'n App.1942, judgment adopted), where it was said:

> [I]f [defendant] presented the two issues together it did so knowing that the court could not, in reason, give both but would have to choose between them. So, having put the court in a dilemma, it cannot now be heard to complain that he chose the issue the more onerous to it.

*Id.,* 158 S.W.2d at 488.

In the case at bar, the question actually submitted asked about any and all conduct which could constitute a waiver of Kemper's right to enforce a forfeiture of the policy. That question necessarily embraces the narrower issue of whether the January 13, 1987, letter to Jimmy Walker amounted to an express extension of that right. The fourth point is overruled.

Mary contends in her fifth and final point of error that the trial court erred in refusing to submit her tendered Special Question No. 3 concerning misrepresentations committed by Kemper in violation of the Texas Insurance Code and Deceptive Trade Practices Act ("DTPA"). We do not agree.

Requested Question No. 3 read:

Did Federal Kemper Life Insurance Company knowingly engage in any of the following conduct? Consider the following conduct, if any, and none other:

1. Making any misrepresentation relating to insurance [SBO § 21.4]

"Misrepresentation" means any of the following:

(1) any untrue statement of a material fact; or

(2) any omission to state a material fact necessary to make the statements made (considered in the light of the circumstances under which they are made) not misleading; or

(3) the making of any statement in such manner or order as to mislead a reasonably prudent person to a false conclusion of a material fact; or

(4) any material misstatement of law

2. Misrepresenting to claimants pertinent facts or policy provisions relating to coverages at issue. [21.21–2(a) ]

■ The fifth point is necessarily conditioned on her first point of error having merit. If the insured's policy terminated as a matter of law, then the post-termination statements by Kemper of which Mary complains could not be actionable under the Texas Insurance Code or DTPA as a matter of law. *See Shindler v. Mid–Continental Life Ins. Co.,* 768 S.W.2d 331, 334–35 (Tex.App.—Houston [14th Dist.] 1989, no writ).

The trial court submitted Question No. 2 to the jury, which read:

Did Federal Kemper Life Assurance Company fail to act in good faith and deal fairly when processing the claim of Mary Walker?

A "failure to act in good faith and deal fairly" means:

1. On December 28, 1988, there was not a reasonable basis for denying benefits under a policy; and

2. Federal Kemper Life Assurance Company knew or should have known that there was not a reasonable basis for denying the claim; and

3. Federal Kemper Life Assurance Company acted with conscious indiffer-

ence to the rights of Mary Walker in denying the claim.

Whether there is a reasonable basis for denial of benefits under a policy must be judged by the facts before the insurer at the time the claim was denied.

Answer: "It failed to" or "It did not fail to."

The jury answered: "It did not fail to."

Mary bases her complaint largely upon the letters from Kemper dated January 13, 1987, October 18, 1988, and December 28, 1988. All letters show that they were written by persons in Kemper's office in Lazy Grove, Illinois. We have already noticed the contents of the January 13th letter, which was written on the day that the insured died. The December 18th letter, addressed to Mary, simply advised her that the policy lapsed on December 1, 1986, due to nonpayment of the premium, and that all coverage ceased as of that date. The letter of December 28th again stated that the policy had lapsed; that the policy stated that the premiums must be paid while the insured was alive; that an offer to reinstate the policy was made to the insured by letter dated January 13, 1987, "the same day that he died"; and "because Mr. Walker died before receiving this letter, he could not have accepted our late payment offer by paying the premium due during his lifetime as required under the terms of the policy.... The late payment offer to Mr. Walker terminated on the day of his death." Kemper refused to accept the premium check of January 22, 1987, in the amount of $132.82, which was an attempt to pay the December 1, 1986, and January 1, 1987, premiums.

■■■ Under TEX.R.CIV.P. 278 (Vernon Supp.1991), failure to submit a question, definition or instruction relied upon by the complaining party cannot be reversible error unless there has been a written request in substantially correct wording for that question, definition or instruction. The requested Question No. 3 did not contain the causation element necessary to recover under either the Insurance Code or the DTPA.

■■■ Moreover, the mere breach of an insurance contract does not give rise to liability under the Insurance Code or DTPA. *South Texas Nat'l Bank v. United States Fire Ins. Co.*, 640 F.Supp. 278, 280 (S.D.Tex.1985) (applying Texas law); *Gulf States Underwriters, Inc. of Louisiana v. Wilson*, 753 S.W.2d 422, 430 (Tex.App.—Beaumont 1988, writ denied); *General Accident, Fire & Life Assur. Corp. v. Legate*, 578 S.W.2d 505, 506–07 (Tex.Civ.App.—Texarkana 1979, writ ref'd n.r.e.). As a result, a post-loss denial of liability for a questionable claim is not actionable under the DTPA or the Insurance Code. *South Texas Nat'l Bank*, 640 F.Supp. at 280; *Yancey v. Floyd West & Co.*, 755 S.W.2d 914, 922 (Tex.App.—Fort Worth 1988, writ denied). Similarly, an insurance company asserting an alternative interpretation of a policy, even if wrong, does not violate the Insurance Code. *Gulf States Underwriters of Louisiana*, 753 S.W.2d at 430.

Conduct prohibited by the Texas Insurance Code is actionable only if the plaintiff has sustained actual damages as a result of that conduct. *See* TEX.INS.CODE ANN. art. 21.21 § 16(a) (Vernon Supp.1991). Mary, therefore, had the burden of producing evidence and obtaining a jury finding that any damages alleged were "factually caused by the defendant's conduct." *See First American Title Co. v. Prata*, 783 S.W.2d 697, 701 (Tex.App.—El Paso 1989, writ denied). She did not meet that burden.

■■■ Even if the statements Mary complains of could be considered "misrepresentations" under the Insurance Code or the DTPA, she was not entitled to submission of her requested Question No. 3 because there is no evidence that she was actually injured as a result of any such statements. In particular, there is no evidence that she was injured by the alleged statements in any way other than the injury that would always occur when an insured is not promptly paid its demand. *See South Texas Nat'l Bank*, 640 F.Supp. at 280–90. As a result, Kemper cannot be liable under the DTPA or the Insurance Code.

In summary, the trial court correctly refused to submit Mary's requested Question No. 3 because: 1) the question was not in substantially correct form, in that it omitted the necessary causation element, and contained duplicative parts in addition to being, in part, a shade or phase of the good faith and fair dealing question actually submitted; 2) the representations complained of cannot, as a matter of law, give rise to DTPA or Insurance Code claim; and 3) in any event, there is no evidence that Mary sustained any actual damages as a result of any such representations. The fifth point is overruled.

The judgment of the trial court is affirmed.