In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-06-045 CV


____________________



MARY LOU WILCOX, Appellant



V.



PETER VANN WILCOX, Appellee






On Appeal from the 172nd District Court


Jefferson County, Texas


Trial Cause No. D-171,492-A






MEMORANDUM OPINION


 Mary Lou Wilcox appeals a summary judgment rendered in favor of her brother, Peter
Vann Wilcox. Mary Lou presents three issues for our consideration. Finding no error, we
affirm.

BACKGROUND


 Mary Lou Wilcox and her brothers, H. Douglas Wilcox ("Doug"), Rex E. Wilcox, and
Peter Vann Wilcox, were the only children born to Howard R. Wilcox and Irma Lou Wilcox
("Irma"). Howard died in 1987, and Irma died in February 1999. Howard's probated will
created two trusts - - a Marital Trust and a Family Trust. The will named Doug and Rex as
co-trustees of each trust, as well as co-executors of Howard's will. With regard to the
Marital Trust, the trustee was to distribute the net income of the trust to Irma in installments
for her "health, support, and maintenance." The Marital Trust's terms further provided that
upon Irma's death, the trustee was to pay the trust's principal to each of Howard's surviving
children, per stirpes. Howard's purpose for creating the marital trust appears twofold: (1)
to provide income for Irma during her lifetime; and (2) to protect the corpus of the trust for
future distribution to each child who survives Irma. The purpose and provisions of the
Family Trust appear similar to those of the Marital Trust. A further provision in Howard's
will states that the trustee "is authorized to use Trust income and/or principal for the
maintenance and improvement of Trust property and for the disbursement of any obligations
outstanding or secured by such Trust property." Howard also directed that the executor of
his estate was authorized to pay taxes and administrative costs of the estate from assets or
property dedicated to the Family Trust, but the executor was explicitly prohibited from using
assets or property dedicated to the Marital Trust for the payment of such expenses. 

 Irma's will provided that Doug and Rex were to serve as independent co-executors
of her estate, co-trustees of all trusts created by her will, and further provided that all four
children were equal beneficiaries to her estate and trusts. (1) Irma died on February 19, 1999.
On February 24, 1999, Doug and Rex filed an application for probate of Irma's will and for
letters testamentary. The will was admitted to probate and letters testamentary issued on
March 16, 1999. On February 18, 2003, Mary Lou sued Doug, Rex, and Peter, as well as an
accounting firm and two of its partners, in County Court at Law No. 1 of Jefferson County,
Texas. Doug and Rex were sued in their individual capacities and as co-executors of Irma's
estate, and as co-trustees of the Family and Marital Trusts. Mary Lou alleged, inter alia, that
upon her mother's death, Doug, Rex, and Peter "embarked upon a scheme to remove [Irma's]
property, to convert it, to use it for their own purposes, and to conceal it from Mary Lou." 

 Mary Lou amended her petition a number of times. On November 24, 2003, the
claims involving the trusts were filed in state district court. This was possibly necessitated
by the fact that district courts and statutory probate courts are the only courts with jurisdiction
over trust proceedings. See Tex. Prop. Code Ann. § 115.001 (Vernon Supp. 2006). (2) Peter
moved for summary judgment in the county court estate suit, with the judge granting same,
and severing the summary judgment from the remaining litigation. Mary Lou appealed and
we affirmed the trial judge's summary judgment. In re Estate of Wilcox, 2006 WL 1280904,
at *4 (Tex. App.--Beaumont May 11, 2006, pet. filed).

 Meanwhile, in state district court, Mary Lou's amended petition filed on October 12,
2005, was the live pleading at the time of the trial court's summary judgment from which this
appeal proceeds. Mary Lou's district court action again included Doug, Rex, Peter, and the
accounting firm as co-defendants, but included only one of the firm's partners. Causes of
action against Doug and Rex included, inter alia, breach of fiduciary duty, breach of trust,
common law fraud, and civil conspiracy. Mary Lou also made a demand for an accounting
as to the assets in the trusts and requested the trial court remove Doug and Rex as trustees
of the Marital and Family Trusts. With regard to Peter, Mary Lou alleged breach of fiduciary
duty, breach of trust, common law fraud, constructive fraud, and civil conspiracy. Peter
answered raising affirmative defenses and a counterclaim. Peter later filed both traditional
and no-evidence motions for summary judgment. Tex. R. Civ. P. 166a(c), (i). Mary Lou
filed responses to the summary judgment motions. The trial court granted Peter's traditional
summary judgment motion but did not rule on his no-evidence motion. Over Mary Lou's
objection, the trial court severed Mary Lou's claims against Peter from her claims against the
remaining defendants. Mary Lou's appeal raises the following three issues: 

 1. Did the trial court err when it granted Appellee's motion for summary
judgment disposing of all causes of action against him?


 2. Did the trial court err when it signed an order that made final a summary
judgment that failed to dispose of all claims against Appellee?


 3. Did the trial court abuse its discretion when it severed the claims against the
Appellee that involve the same facts and issues against the other defendants,
who would be jointly and several [sic] liable with Appellee for an indivisible
injury?


 The trial court's order granting summary judgment for Peter reads, in pertinent part,
as follows: 

 The Court, having considered Peter V. Wilcox's Motion For Summary
Judgment [p]ursuant to T.R.C.P. 166a(c) in the above referenced action, finds
the Motion was made in proper form and time. After considering the motion,
response, and arguments of counsel, if any, this Court is of the opinion that
summary judgment is proper as a matter of law. It is therefore, 

 ORDERED that Peter V. Wilcox's Motion for Summary Judgment is
GRANTED, and that Plaintiff Mary Lou Wilcox's [sic] take nothing as to her
claims against Defendant Peter Wilcox.


SUMMARY JUDGMENT


 Texas uses summary judgment "'to eliminate patently unmeritorious claims and
untenable defenses.'" See Casso v. Brand, 776 S.W.2d 551, 556 (Tex. 1989)(quoting City
of Houston v. Clear Creek Basin Authority, 589 S.W.2d 671, 678 n.5 (Tex. 1979). To obtain
summary judgment, the movant has the burden of showing that there is no genuine issue of
material fact and that he is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c). 
"In deciding whether there is a disputed material fact issue precluding summary judgment,
evidence favorable to the nonmovant will be taken as true. Every reasonable inference must
be indulged in favor of the nonmovant and any doubts resolved in its favor." Nixon v. Mr.
Prop. Mgmt. Co., 690 S.W.2d 546, 548-49 (Tex. 1985). 

 Summary judgment for a defendant is proper when the summary judgment evidence
negates an essential element of the plaintiff's cause of action as a matter of law or
conclusively establishes all elements of an affirmative defense as a matter of law. See Black
v. Victoria Lloyds Ins. Co., 797 S.W.2d 20, 27 (Tex. 1990). Once the defendant produces
sufficient evidence to establish the right to summary judgment, the burden shifts to the
nonmovant to produce controverting evidence raising a fact issue as to the elements negated. 
See Torres v. Western Cas. & Sur. Co., 457 S.W.2d 50, 52 (Tex. 1970). When the order
granting summary judgment does not specify the particular grounds the trial court sustained,
on appeal, the summary judgment opponent must defeat each summary judgment ground
argued by the movant. See Carr v. Brasher, 776 S.W.2d 567, 569 (Tex. 1989). Otherwise,
an appellate court must uphold the summary judgment on any ground that is supported by the
evidence and the pleadings. Id. Peter distilled the bases for his summary judgment motion
in the following manner: 

 Peter owed no legal duty to Mary Lou. Pete is not the Trustee or Co-Trustee of the Marital Trust or the Family Trusts, has not served as same, and
has not participated in any funding or distribution of Marital Trust or Family
Trust properties. Pete and Mary Lou have no fiduciary or confidential
relationship. Pete has not made any representations to Mary Lou, and has not
made false representations with intent that she rely upon them to her detriment. 


 

ISSUE ONE


A. Breach of Fiduciary Duty and Breach of Trust. 

 A fiduciary relationship is said to exist when one person has a duty to act for or give
advice for the benefit of another. Kline v. O'Quinn, 874 S.W.2d 776, 786 (Tex. App.--Houston [14th Dist.] 1994, writ denied). In a fiduciary relationship, one person "binds
himself to subvert his own interest to those of his principal. If the relationship between two
parties does not involve the element of a solely subordinated interest, . . . it is not a fiduciary
relationship." See Walker v. Federal Kemper Life Assur. Co., 828 S.W.2d 442, 452 (Tex.
App.--San Antonio 1992, writ denied). Because certain relationships always have these
characteristics, such relationships are categorized as fiduciary relationships as a matter of
law. See Thigpen v. Locke, 363 S.W.2d 247, 253 (Tex. 1962). For example, attorneys owe
fiduciary duties to their clients, partners in a general partnership owe each other fiduciary
duties, and general partners in a limited partnership owe fiduciary duties to the limited
partners. See id.; Brazosport Bank v. Oak Park Townhouses, 889 S.W.2d 676, 683 (Tex.
App.--Houston [14th Dist.] 1994, writ denied). 

 A second type of fiduciary relationship is referred to as either a "confidential," or
"informal" fiduciary relationship. See Crim Truck & Tractor Co. v. Navistar Int'l Transp.
Corp., 823 S.W.2d 591, 594 (Tex. 1992); see also Meyer v. Cathey, 167 S.W.3d 327, 331
(Tex. 2005). To establish a confidential or informal fiduciary relationship, a party must show
that a special relationship of trust and confidence existed prior to, and apart from, any
purported agreement made the basis of the suit. See Associated Indem. Corp. v. CAT
Contracting, Inc., 964 S.W.2d 276, 288 (Tex. 1998); Schlumberger Tech. Corp. v. Swanson,
959 S.W.2d 171, 177 (Tex. 1997). Additionally, such a relationship is a "two-way street"
in that one party must not only trust the other, but the relationship must be mutual and
understood as such by both parties. See Swinehart v. Stubbeman, McRae, Sealy, Laughlin
& Browder, Inc., 48 S.W.3d 865, 882 (Tex. App.--Houston [14th Dist.] 2001, pet. denied)
(citing Hoover v. Cooke, 566 S.W.2d 19, 26 (Tex. Civ. App.--Corpus Christi 1978, writ ref'd
n.r.e.)). A family relationship, while it is considered as a factor, does not, by itself, establish
a fiduciary relationship. See Texas Bank & Trust Co. v. Moore, 595 S.W.2d 502, 508 (Tex.
1980). Fiduciary relationships are not lightly created. See Schlumberger, 959 S.W.2d at 594. 
Although the existence of an informal fiduciary relationship is ordinarily a question of fact,
it becomes a question of law when there is no evidence on the issue. See Crim, 823 S.W.2d
at 177. 

 The elements of a breach of fiduciary duty action are: (1) a fiduciary relationship
between the plaintiff and defendant; (2) the defendant must have breached its fiduciary duty
to the plaintiff; and (3) the defendant's breach must result in injury to the plaintiff or benefit
to the defendant. Punts v. Wilson, 137 S.W.3d 889, 891 (Tex. App.--Texarkana 2004, no
pet.) It must be remembered that only the trust issues were before the trial court at the time
it rendered summary judgment in favor of Peter. (3) In that vein, Peter's summary judgment
motion asserted that a fiduciary relationship was never established between Peter and Mary
Lou. Because he was not a trustee or co-trustee to either the family or marital trusts, no
formal fiduciary relationship was proven, and because there was no confidential relationship
between Peter and Mary Lou, the existence of an informal fiduciary relationship was equally
lacking in proof. (4) The record evidence is uncontroverted that Peter was neither named nor
appointed as a trustee or co-trustee to the trusts. Mary Lou agrees that no formal fiduciary
relationship existed between herself and Peter, and points out she did not sue him in the
capacity of a trustee. Thus, Peter's summary judgment evidence focuses on negating the
existence of an informal fiduciary relationship. 

 Peter's affidavit establishes that he has not made personal decisions or used personal
judgment "concerning any Trust distributions or non distributions made or not made to Mary
Lou Wilcox." His affidavit concludes with the following statement: 

 I have never acted on behalf of my sister, Mary Lou Wilcox, regarding
any financial matters, Estate matters, personal matters, or Trust matters, nor
have I provided guidance, judgment, advice, or influence to her on any other
matters. For many years prior to my mother's death, Mary Lou and I saw each
other only on rare occasions and spoke on the telephone no more than two to
three times a year. 


Additionally, Peter's summary judgment evidence includes the following exchange between
Peter's trial counsel and Mary Lou during her deposition: 

 Q.[Peter's Counsel] Fair enough. Do you know what a fiduciary duty is?


 A.[Mary Lou] I don't know about the legal definition of fiduciary duty.


 Q. What's your understanding of what fiduciary duty is?


 A. An obligation to carry out certain functions in a bipartial [sic] manner.


 Q. And you've alleged breached [sic] of fiduciary duty in this case. Correct?


 A. Yes.


 Q. And I understand that you're alleging that the executors, your brother Doug
and your brother Rex have breached fiduciary duties. Correct?


 A. Yes. 


 Q. Do you have any personal knowledge as to whether your brother Pete ever
had a - - any type of fiduciary duty to you?


 A. I don't know quite how to answer that.


 Q. All right.


 A. I think Pete had a duty to - - to - - to help protect his younger sister.


 Although brother and sister, Peter's evidence indicates his relationship with Mary Lou
was never one of trust and confidence with regard to personal or financial matters. In reply,
Mary Lou's evidence does not raise a fact issue with regard to the nature of her prior
relationship with Peter. Her only responsive evidence pertinent to this issue appears to be
found in excerpts from Peter's deposition, and her own affidavit. Within Peter's deposition,
the lone exchange pertaining to his relationship with Mary Lou appears as follows: 

 Q.[Mary Lou's Counsel] When you went back to - - one, to the funeral and
then, two, at your mom's house.


 A.[Peter] Yes, sir.


 Q. Do you recall any discussions that you had or conversations at all, any kind
of encounter you had with Mary Lou at your mother's house after the funeral?


 A. No, sir.


 Q. Have you had any discussions with Mary Lou about your mother at any
time since she died?


 A. Since she died?


 Q. Uh-huh.


 A. I don't recall.


 Q. Can you not recall one meeting, encounter, discussion, conversation, phone
call with Mary Lou since your mother passed away?


 A. Specifically, no, sir.


 Q. Do you not think much of your sister?


 A. No, sir.


 Q. I don't know that I gave you a fair question. Do you - - tell me what you
think of your sister.


 A. I love my sister.


 . . . .


 Q. (By [Mary Lou's Counsel]) If you can remember a conversation or an
encounter you've had since your mother died, tell me about it.


 A. Specifically, no, sir.


 Mary Lou's affidavit is silent as to the state of her relationship with Peter at any point
in time. Her affidavit essentially contains accusations of mismanagement of the trusts by
the co-trustees (Doug and Rex), and names Peter as having "assisted and served as Doug's
minion in secreting trust and estate assets, falsifying asset inventories, and distributing assets
without including me as a distributee." Mary Lou fails to produce any controverting
evidence to raise a fact issue on the existence of an informal fiduciary or confidential
relationship with Peter prior to the death of their mother. See Hubbard v. Shankle, 138
S.W.3d 474, 483 (Tex. App.--Fort Worth 2004, pet. denied); Thames v. Johnson, 614 S.W.2d
612, 614 (Tex. Civ. App.--Texarkana 1981, no writ). "The existence of the fiduciary
relationship is to be determined from the actualities of the relationship between the persons
involved." Thigpen, 363 S.W.2d at 253. We therefore find that the trial court did not err in
granting Peter's summary judgment as to Mary Lou's causes of action for breach of fiduciary
duty and breach of trust. (5) 

B. Common Law Fraud and Constructive Fraud. 

 Constructive fraud is the breach of a legal or equitable duty that the law declares
fraudulent because it violates a fiduciary relationship. See Archer v. Griffith, 390 S.W.2d
735, 740 (Tex. 1964). As noted above, Peter conclusively established the absence of a
fiduciary relationship between himself and Mary Lou. Therefore, summary judgment was
proper as Peter's evidence also negated the "fiduciary relationship" element in Mary Lou's
constructive fraud cause of action as a matter of law. See Black, 797 S.W.2d at 27. 

 The elements of common law fraud are: "(1) that a material representation was made;
(2) the representation was false; (3) when the representation was made, the speaker knew it
was false or made it recklessly without any knowledge of the truth and as a positive assertion;
(4) the speaker made the representation with the intent that the other party should act upon
it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered
injury." See Johnson, 73 S.W.3d at 211 n.45 (quoting In re FirstMerit Bank, N.A., 52
S.W.3d 749, 758 (Tex. 2001)). As for the common law fraud claim, in addition to
establishing the absence of a fiduciary relationship between himself and Mary Lou, Peter's
summary judgment evidence indicated he and Mary Lou spoke on very few occasions, and
that he could not recall any conversations with Mary Lou at all since the death of their
mother. "As a general rule, a failure to disclose information does not constitute fraud unless
there is a duty to disclose the information." Bradford v. Vento, 48 S.W.3d 749, 755 (Tex.
2001). Therefore, it is only when the particular circumstances impose a duty on a party to
speak and he deliberately remains silent that his silence may be found equivalent to a false
representation for purposes of proving fraud. See id. Thus, Peter affirmatively negated the
elements requiring a representation of some kind be made to Mary Lou that was both
"material" and "false." 

 Mary Lou's response regarding the fraud allegation reads as follows: 

 There are also material issues of fact regarding claims for common law and
constructive fraud. Defendant's obligation as a fiduciary is to provide full
disclosure to Mary Lou regarding the transactions in which he has knowledge. 
Defendant owed a duty to speak and inform Mary Lou as a fiduciary, yet he
deliberately remained silent - - this is equivalent to a false representation. As
a fiduciary, Defendant had a duty to speak and disclose his knowledge of the
transactions and be fair about them. A false impression arises when the
defendant discloses some facts and conceals others with the knowledge that
the plaintiff is ignorant of the undisclosed facts and does not have an equal
opportunity to discover the truth. Defendant's deliberateness is also an issue
for the jury. Deceptive conduct also is equivalent to a false statement of fact
giving rise to fraud liability. As discussed above, Defendant's actions and
assistance provided to Doug demonstrate more than a scintilla of evidence of
his liability for fraud. Mary Lou has been damaged as a result of these actions. 
Therefore, material fact issues exist regarding Defendant's liability for fraud
and as a result his no-evidence motion should be denied. (citations and
footnotes omitted.)


 We initially note that a response to a summary judgment motion is a pleading and does
not, standing alone, constitute competent summary judgment evidence. See City of Houston
v. Clear Creek Basin Auth., 589 S.W.2d 671, 678 (Tex. 1979). Mary Lou's response
assumes the existence of a fiduciary relationship between herself and Peter. Using this
assumption as the basis for her response, she points to places in the record where fact issues
are raised requiring reversal of the summary judgment. She relies on her affidavit, upon
Peter's affidavit, and upon a portion of Peter's deposition. Her evidence does not indicate
what specific statement or representation Peter made to her with regard to the trusts that was
false or that misrepresented a material fact. Again, Mary Lou has failed to carry her burden
to produce controverting evidence raising a fact issue as to the elements negated. Summary
judgment was proper for Peter on the common law fraud cause of action. 

C. Civil Conspiracy.

 Lastly, Mary Lou contends that, fiduciary status notwithstanding, Peter is also liable
as a joint tortfeasor for the breaches of fiduciary duty allegedly perpetrated by co-trustees,
Doug and Rex. In Texas, a party who knowingly participates in another's breach of fiduciary
duty may be liable for the breach as a joint tortfeasor. See Kinzbach Tool Co. v. Corbett-Wallace Corp., 138 Tex. 565, 160 S.W.2d 509, 514 (1942). Similarly, a party may be held
liable for another's breach of fiduciary duty if the party is a co-conspirator in the breach. 
Under Texas law, actionable civil conspiracy occurs when there is a "combination by two or
more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by
unlawful means." Firestone Steel Prods. Co. v. Barajas, 927 S.W.2d 608, 614 (Tex. 1996);
Massey v. Armco Steel Co., 652 S.W.2d 932, 934 (Tex. 1983). The "gist of a civil
conspiracy" is the injury the co-conspirators intend to cause. Triplex Commc'n, Inc. v. Riley,
900 S.W.2d 716, 720 (Tex. 1995) (quoting Schlumberger Well Surveying Corp. v. Nortex Oil
& Gas Corp., 435 S.W.2d 854, 856 (Tex. 1968)). Mary Lou's amended petition alleges that
Peter, along with the remaining individual and corporate co-defendants, conspired against
her in a number of general ways. The only specific allegation contends the defendants "had
a meeting of the minds as to how to misrepresent assets on the 706 Estate Tax Return, the
inventory of the estate, the tax returns of the Trusts, the assets of the Trusts and the
accountings of the Trusts." 

 With regard to the trusts, Mary Lou's conspiracy action as to Peter alleged
misrepresentation of the tax returns of the trusts, and misrepresentation of the assets of the
trusts and of the accountings of the trust. "The general rule is that a trustee may not delegate
his discretionary power to another." Transamerican Leasing Co. v. Three Bears, Inc., 586
S.W.2d 472, 476 (Tex. 1979). However, a trustee may, after determining how to exercise
his discretion, give authority to another to carry out ministerial or mechanical acts to
effectuate the trustee's decisions. Id. In his affidavit attached to his summary judgment
motion, Peter stated: 

 I have not participated in any Trustee or Co-Trustee decisions concerning the
Trusts. I have not participated in any decisions concerning the funding or
distribution of the Marital or Family Trusts. I have not used my personal
judgment or my personal discretion concerning any decisions concerning Trust
business and/or distribution or non distribution of the Trusts or property
belonging to the Trusts. I have not made personal decisions or used my
personal judgment concerning any Trust distributions or non distributions
made or not made to Mary Lou Wilcox. 


 Additionally, Mary Lou's deposition testimony indicated her assertions of wrongdoing
with regard to the trusts were neither based in fact nor on her personal knowledge. For
example, she agreed that "some of the estate and the trusts have been distributed[.]" Yet,
when asked if she agreed that Peter did not participate in determining how much of a share
each beneficiary received, Mary Lou replied that she had no personal knowledge of Peter's
role in making such a determination and also agreed she had not seen any documents
showing Peter's involvement in such determinations. She also agreed it was not Peter's
responsibility to provide her with an accounting. At one point, a response by Mary Lou
included that it was her "belief" that Peter performed "some functions" during a time when
Rex was ill. When asked if she had any personal knowledge that Peter actually functioned
as a co-trustee and made decisions in that capacity, she replied, "I don't have personal
knowledge that he made a decision to do something." When asked if she was aware of
Peter's participation in the "formal distribution" of "trust monies and things like that," Mary
Lou responded, "I'm not aware of that, you know, specifically." She also admitted that she
had no documents to that effect either. 

 Peter's summary judgment evidence established that he did not participate in making
any decisions with regard to management or distribution of the estate or trust assets,
including the bank accounts. He further established that Mary Lou was unable to provide a
factual basis for any alleged wrongdoing on his part regarding the trusts that would preclude
summary judgment in his favor. Peter's evidence established he was entitled to summary
judgment as a matter of law as to Mary Lou's joint tortfeasor/civil conspiracy cause of action. 
 Mary Lou's response evidence includes, inter alia, her affidavit and copies of two
wire transfers. The pertinent portion of her affidavit reads: 

 The trustees have also commingled trust and estate assets. The trustees and
Peter have taken distributions from the trust and estate during this time and
used the assets for their own personal benefit and gain. I am and was familiar
with the assets my mother and father had prior to their deaths. The value of
the assets that have not been safeguarded and have "disappeared" is at least
$12,500.00.


The one assertion in her summary judgment response for which she attempts to supply a
proper factual basis reads: "[Doug and Rex] have also commingled the trust assets with the
assets in their mother's estate during this time [time period since mother's death on February
19, 1999]." 

 Rule 166a(f) of the Rules of Civil Procedure requires that "[s]upporting and opposing
affidavits shall be made on personal knowledge, shall set forth such facts as would be
admissible in evidence, and shall show affirmatively that the affiant is competent to testify
to the matters stated therein." Tex. R. Civ. P. 166a(f). (6) Conclusory statements in an affidavit 
are not competent to serve as summary judgment evidence. Tex. Division - Tranter, Inc. v.
Carrozza, 876 S.W.2d 312, 314 (Tex. 1994). "A conclusory statement is one that does not
provide the underlying facts to support the conclusion." 1001 McKinney Ltd. v. Credit Suisse
First Boston Mortg. Capital, 192 S.W.3d 20, 27 (Tex. App.--Houston [14th Dist.] 2005, pet.
denied). 

 Except for the assertions that trust and estate assets have been commingled and that
$12,500 of "assets" have not been "safeguarded," the remaining assertions and conclusions
in Mary Lou's affidavit are not supported by underlying facts. Mary Lou's response does
contain "Exhibit B," copies of two separate wire-transfers of cash from what appears to be
two separate accounts held at a branch of Hibernia Bank, with both accounts containing
assets from the Marital Trust. Both transactions from Hibernia Bank appear to authorize a
wire-deposit of funds to an account designated as an estate account maintained at a branch
of Community Bank located in Kirbyville, Texas. Both transfer slips provide a "customer
signature" line, and on both slips someone with the last name of "Wilcox" has signed. 
However, we are unable to determine which Wilcox signature appears as the initials
preceding the sur-name are virtually illegible. Furthermore, there is nothing in the record
identifying the signatures on the two transfer slips. 

 From Peter's deposition, it appears that Doug established the Community Bank estate
account and had Peter listed as a signatory on the account. There is no evidence, however,
that Peter had any involvement, signatory or otherwise, with the trust accounts, other than
his status as a beneficiary. A careful reading of Peter's deposition testimony indicates that
any checks he signed on the Community Bank estate account had already been made out as
to payee and amount by someone at the co-defendant accounting firm, and always according
to prior instructions from Doug. Peter was not asked about the two wire transfers contained
in Mary Lou's Exhibit B. The record does not contain any other documents, testimony based
upon personal knowledge, or otherwise proper summary judgment evidence that would
permit us to infer the transfers in question were in furtherance of an agreement between
Doug and Peter to ultimately deprive Mary Lou of her proper share of the Marital and Family
Trusts. 

 While the Trust Code, as well as the trusts themselves, require the trustee to distribute
the assets of the trusts to the appropriate beneficiaries upon the termination of the trusts, the
trustee is still permitted to exercise trustee powers "for the reasonable period of time required
to wind up the affairs of the trust[.]" Tex. prop. Code Ann. § 112.052. Although the
transfer slips indicate the two transactions occurred almost ten months after the terminating
event (Irma's death), we find no authority permitting us to elevate these circumstances,
without more, to an intentional breach of fiduciary duty in furtherance of a conspiracy to
deprive Mary Lou of her interest in the trusts. See Barajas, 927 S.W.2d at 614 (parties
cannot engage in a civil conspiracy to be negligent). 

 There is a distinct paucity of solid facts allowing a reasonable inference that either of
the co-trustees, Doug or Rex, engaged in post-termination transactions specifically involving
identifiable trust assets for personal gain or that Peter knowingly assisted them in doing so. 
We are presented with nothing closely akin to the evidence set out in our opinion in Reed v.
Stringer, 472 S.W.2d 329, 330-31 (Tex. Civ. App.--Beaumont 1971, writ ref'd n.r.e.), in
which we reversed summary judgment for a trustee-defendant, finding the record-evidence
did indeed raise a fact issue on whether the trustee breached his fiduciary duty. By contrast,
Mary Lou provides only subjective beliefs and conclusory allegations in support of her civil
conspiracy/joint tortfeasor theory of Peter's liability. "[S]ubjective beliefs are no more than
conclusions and are not competent summary judgment evidence." Texas Division-Tranter,
Inc. v. Carrozza, 876 S.W.2d 312, 314 (Tex. 1994). Peter's evidence firmly established that
all of his actions involving the trusts were merely "ministerial or mechanical acts"
undertaken upon instruction from either Doug or Rex in their discretionary authority as co-trustees. See Transamerican Leasing Co., 586 S.W.2d at 476. Mary Lou failed to respond
with competent summary judgment evidence raising a fact issue and, therefore, failed to
carry her burden in the face of Peter's proof.

 In her brief, Mary Lou contends that summary judgment in favor of Peter on the civil
conspiracy action was improper as Peter's motion for summary judgment failed to address
civil conspiracy. Peter's summary judgment motion recognized the civil conspiracy claim,
averring that because he owed no legal duty to Mary Lou, he could not be liable for any torts
she alleged. If it had been shown that an express fiduciary intentionally breached a duty to
Mary Lou, such breach may have been imputed to Peter as a joint tortfeasor if it was further
shown Peter intentionally agreed to aid or facilitate the fiduciary in such breach. See
Kinzbach Tool Co., 160 S.W.2d at 514. As discussed above, however, there is no record-evidence of any intentional wrongdoing by Doug or Rex with regard to the trusts, including
the two wire-transfer transactions. Therefore, the trial court properly rendered summary
judgment in Peter's favor as to the civil conspiracy claim. (7) Mary Lou's first issue is
overruled.

ISSUE TWO


 Issue two complains summary judgment was improper as it failed to dispose of all
claims brought against Peter by Mary Lou. At the outset, we note the summary judgment
order recites that Peter's summary judgment motion is granted, "and that Plaintiff Mary Lou
Wilcox's [sic] take nothing as to her claims against Defendant Peter Wilcox." Such language
has been held to indicate finality. See Lehmann v. Har-Con Corp., 39 S.W.3d 191, 200 (Tex.
2001). At any rate, following its rendition of the summary judgment in favor of Peter, the
trial court entered an order severing Mary Lou's claims against Peter from those against the
remaining co-defendants. In pertinent part, the severance order reads as follows: 

 [U]pon the Court's signing of this Order, the Order Granting Summary
Judgment in favor of Peter V. Wilcox dated December 19, 2005 will become
the final order in the Severed Cause. The Court finds that, because of the
severance ordered herein, all issues and matters between Peter V. Wilcox and
Mary Lou Wilcox have been decided, that Mary Lou Wilcox take nothing from
Peter V. Wilcox, and that this Order constitutes a final judgment in the Severed
Cause.


We find the severance order unequivocally makes the summary judgment order final. See
id. The combined language contained in both orders clearly expresses the trial court's intent
to finally dispose of the entire cause between Mary Lou and Peter, including any of Peter's
counterclaims then still pending. See id. Additionally, all of Mary Lou's contentions
regarding alleged deficiencies in Peter's summary judgment motion have been addressed and
rejected under issue one. Therefore, the trial court did not grant more relief than Peter was
entitled. Issue two is overruled.

ISSUE THREE 


 In her final issue, Mary Lou contends there was error by the trial court when it severed
her claims against Peter from those remaining against his co-defendants. We review the trial
court's decision to grant a severance under an abuse of discretion standard. See Guaranty
Fed. Sav. Bank v. Horseshoe Operating Co., 793 S.W.2d 652, 658 (Tex. 1990). "The
controlling reasons for a severance are to do justice, avoid prejudice, and further
convenience." Id. A claim is properly severable if (1) the controversy involves more than
one claim; (2) the severed claim is one that would be the proper subject of a lawsuit if
independently asserted; and (3) the severed claim is not so interwoven with the remaining
action that the claims involve the same facts and issues. Id. Rule 41 of the Texas Rules of
Civil Procedure provides discretion to the trial court in severing cases. See Tex. R. Civ. P.
41; Guaranty Fed. Sav. Bank, 793 S.W.2d at 658. Although a reviewing court will not
reverse the trial court's severance absent an abuse of discretion, if any of the three criteria
is not met, then the trial court has abused its discretion and reversal is warranted. See State
Dept. of Highways & Pub. Transp. v. Cotner, 845 S.W.2d 818, 819 (Tex. 1993) (holding the
trial court erred in severing claim because the severed claim was so interwoven with the
remaining action that they involved the same facts and issues). 

 Contrary to the assertion in her brief, the various pleadings filed by Mary Lou in this
cause do not "make clear" any role Peter played in the various causes of action she alleges
regarding the trusts. Indeed, her position on all her claims against Peter started at one fixed
point - - that Peter was an informal fiduciary as to her and therefore owed her such
obligations and duties as the law required of a fiduciary. The record-evidence, however,
establishes as a matter of law that no fiduciary relationship has ever existed between Mary
Lou and Peter. As discussed in issue one, our examination of the record-evidence concluded
that Mary Lou failed to respond with competent evidence to raise fact issues for her claims
against Peter. From the state of the record before us, we conclude the severed actions against
Peter meet the severance criteria. As such, we cannot say the trial court abused its discretion
in severing Mary Lou's claims against Peter from the remaining lawsuit. See Guaranty Fed.
Sav. Bank, 793 S.W.2d at 658. Issue three is overruled. The trial court's order granting
summary judgment in favor of Peter V. Wilcox is affirmed. 

 AFFIRMED.

 
 __________________________________

 CHARLES KREGER

 Justice


Submitted on July 27, 2006

Opinion Delivered December 28, 2006



Before McKeithen, C.J., Gaultney and Kreger, JJ.
1. Irma's will appoints Doug and Rex as co-trustees, and Peter as alternate co-trustee, of all trusts created by her Will. As the instant litigation involves only the Marital
or Family Trusts created by Howard's will, Peter's "alternate co-trustee" status is not
implicated. 
2. Since the filing of Mary Lou's suit, the legislature has amended section 115.001
of the Texas Property Code. See Act of May 12, 2005, 79th Leg., R.S., ch. 148, § 22,
section 115.001, 2005 Tex. Gen. Laws 287, 294. Because the changes do not affect our
analysis, we refer to the current version of the statute. 
3. The remaining portion of Mary Lou's suit pertaining to Irma's estate was still
pending in County Court at Law No. 1 of Jefferson County when the trial court granted
Peter's summary judgment motion in the trust causes of action. 
4. Contrary to an assertion in Mary Lou's brief, Peter's summary judgment motion
does address the issue of the lack of an informal fiduciary relationship. 
5. Although no authority is cited by Mary Lou, it would appear that an action for
breach of trust also requires proof of the prior existence of either a formal or informal
fiduciary relationship. See Burrow v. Arce, 997 S.W.2d 229, 240 (Tex. 1999) (Supreme
Court held a client need not prove actual damages to obtain forfeiture of attorney's fee for
the attorney's breach of fiduciary duty to the client, relying, inter alia, on the general rule
for breach of trust.).
6. Pertinent to Rule 166a(f) are the provisions of Rule 602 of the Rules of Evidence,
which reads, in pertinent part: "A witness may not testify to a matter unless evidence is
introduced sufficient to support a finding that the witness has personal knowledge of the
matter. Evidence to prove personal knowledge may, but need not, consist of the
testimony of the witness." Tex. R. Evid. 602. 
7. Our opinion in this particular cause should not be understood or taken as a ruling
or comment on potential liability, if any, of the remaining co-defendants, nor taken as a
ruling or comment on the merits of any cause of action or defense still subject to being
litigated in either action still pending below.